**HURT, Plaintiff-Appellant, v. ROGERS TRANSPORTATION COMPANY, Defendant-Appellant, FORD MOTOR COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22283.   Decided May 7, 1952.

Harrison, Spangenburg & Hull, Cleveland, for plaintiff-appellant.

McConnell, Blackmore, Cory & Burke, S. Burns Weston, Cleveland, for defendant-appellant.

Arter, Hadden, Wykoff & VanDuzer, R. Crawford Morris, L. B. Davenport, Cleveland, for defendant-appellee.

(FESS, PJ, CONN, J, SAVORD, J, of the 6th District sitting by designation.)

## OPINION

By FESS, J:

Plaintiff appeals on questions of law from a judgment on behalf of the defendant, Ford Motor Company, entered by the court notwithstanding a verdict on behalf of the plaintiff. Defendant, Rogers Transportation Company, undertakes an appeal on questions of law from a judgment entered upon a verdict in favor of the plaintiff, and assigns as error, (1) the failure of the court to grant the motion of the defendant at the conclusion of all the evidence to direct a verdict in favor of the defendant, and (2) in failing to grant the motion of the defendant for judgment notwithstanding the verdict. Defendant, Rogers, also filed a motion for new trial, which remains undetermined pending this appeal.

The judicial system of Ohio is grounded upon the established principle referred to as a dogma of one trial and one review. The modern tendency of appellate procedure, by statute as well as by judicial decision, is to facilitate the final

settlement and determination of litigation. To permit a party to take an appeal from an order overruling a motion for a directed verdict or a motion for judgment notwithstanding the verdict, pending the determination of a motion for new trial, affords such party two reviews of the same trial and indefinitely prolongs the final determination of the litigation. For example, in the instant case, if the judgment of the trial court be affirmed, the cause must be remanded to that court for further proceedings. The first step in such proceedings will be the determination of the motion for a new trial. If granted, a second trial will take place, from which a further appeal without doubt will properly be had. If its motion be overruled, the defendant will again take a second appeal requiring a second review of the same record of some 1300 pages, to determine whether prejudicial error had intervened at the trial. In a case where the motion to direct a verdict or the motion for judgment notwithstanding the verdict is overruled and also a motion for a new trial is granted, no particular criticism can be directed toward allowing an appeal from the overruling of the motions. But when an appeal is taken from orders overruling a motion for a directed verdict or a motion for judgment notwithstanding, pending the determination of a motion for new trial, the judgment from which essentially the appeal is taken does not have the finality which is present if the motion for new trial be overruled. The latter permits the defeated party at his election to appeal from the judgment and in one review have his right to final judgment as a matter of law, or his right to a new trial, determined upon one review.

One can readily appreciate that a defeated litigant would prefer to have his asserted right to judgment as a matter of law determined without the influence of errors incident to the trial which would warrant reversal and a new trial rather than final judgment. But any benefit thus obtained by the appellant is outweighed by the detriment to the appellee as well as the courts in prolonging the litigation. The opinion in **Michigan-Ohio-Indiana Coal Assoc. v. Nigh, 131 Oh St 405,** says that the defendant has an anchor to the windward: he has two strings to his bow.[1]

---

1. "Ne totally to grounde you upon the said Queene doings, but to have 2 strings to your bowe, specially when the cone is wrought with a woman's fingers. *Wolsey* v. *St. Papers* Hen. VIII, IV, 103. A second string imports a second resource available if the first should fail, such as a second string horse or athlete." Oxford English Dictionary.

With all due respect to Judge Jones, the simile would be more apt if it recognized that the "second stringer" should run with the "first stringer." We are also encouraged to suggest that the order from which Rogers takes its appeal is not final by certain expression in the opinion in **Green v. Acacia Ins. Co., 156 Oh St. 1.**[2]

Furthermore, attention is directed to the fact that no journal entry appears with respect to the overruling of the motion for direction of a verdict, although the action is revealed in the bill of exceptions.

It is therefore concluded that the order from which the appeal of Rogers is taken is not a judgment or final order within the meaning of the term as used in **Section 6 of Article IV of the Constitution** and the appeal is dismissed sua sponte.

We reiterate that upon this appeal we may not determine whether any error prejudicial to the defendant occurred at the trial or whether the verdict is manifestly against the weight of the evidence.

With respect to the appeal of plaintiff from the order granting Ford's motion for judgment notwithstanding the verdict,

---

2. In the opinion, Stewart, J., says:

"The fact of entering judgment before the filing and consideration of a motion for a new trial does not constitute such a judgment as a final order, for the reason that the trial judge still has control of the judgment until either no motion for a new trial has been filed within the designated time or the court has passed upon such a motion.

"\* \* \*

"By the same line of reasoning, the trial court in the present case had control of the judgment on the verdict until it passed upon the motion for a new trial, and since the granting of a new trial was not erroneous, there being no abuse of discretion upon the part of the court, there is no final order, for the plaintiff has the right to a retrial of the case in the same court and might well obtain a judgment against defendant."

In his dissent, Judge Hart makes this significant comment:

"A judgment or decree to be final for the purposes of an appeal must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance in the appellate court, the court below would have nothing to do but execute the judgment or decree it had already entered. *Dainese* v. *Kendell*, 119 U. S. 53, 30 L. Ed. 305, 78 S. Ct. 65. A judgment or decree is final which disposes of the whole merits of the case and leaves nothing for the further consideration of the court. *Kelley* v. *Stanbery*, 13 O. 408; *Teaff* v. *Hewit*, 1 Oh St 511; *Cinn. Sandusky & Cleve. R. R.* v. *Sloan*, 31 Oh St 1."

necessarily some comment is made with respect to the evidence as it relates to the conduct of Rogers[3] as well as Ford.

The evidence discloses that on August 20, 1948, while driving his passenger car in an easterly direction on Highway No. 2 beyond the city limits of Toledo, the plaintiff was seriously injured by a steel forging (herein sometimes referred to as Exhibit D) which came through the windshield of his automobile without warning and with great force struck that portion of his face surrounding his left eye. The evidence is uncontradicted that the forging struck plaintiff with such force as to render him unconscious and to permanently and severely injure him. He had no knowledge nor recollection of what hit him. Exhibit D was shaped like a doughnut, 4 inches in diameter with a large hole in the center, 1-½ inches in height and weighed 2-½ pounds. There is substantially credible evidence that the forging was made at the Ford plant in Canton, Ohio, was loaded in Canton with a number of similar forgings in a large crate called a "pallet box" upon the flat-bottom, four-wheel trailer of the defendant Rogers on the morning of the date of the accident. The Rogers outfit consisted of three units:—a tractor, a semi-trailer or tandem attached to the fifth wheel of the tractor, and a four-wheel flat-bottomed trailer attached to the tandem. Twelve large pallets, containing Ford parts, were placed by Ford on the outfit, with supervision as to the placing of the crates for balanced weight by Rogers. The pallet boxes weighed from 210 to 255 pounds apiece and were about 51 inches square, made of 3/4 to 1 inch rough lumber, solid bottoms, bolted in two places at each corner, with 3 to 4 inch wide skids under the bottom to accommodate the fork of the lifting crane. The sides were comprised of 3/4 to 1 inch thick boards of varying width, with spaces likewise varying in width between the boards. The boxes were 30 inches high with inside depth of 24 inches.

Four different types of forgings were included in the shipment. Two boxes were loaded at the front of the tandem immediately behind the tractor cab and four boxes toward the rear of the tandem. The six boxes contained an aggregate of 3945 forgings weighing net 27,133 and gross (including the crates) 28,498 pounds. 1349 forgings weighed 11 pounds

---

3. Plaintiff contends that Rogers suppressed evidence which Rogers vigorously denies, but such contentions of course have no bearing upon the merits of the controversy. A similar observation may be made with respect to plaintiff's claim that Rogers criminally overloaded its vehicle.

each; 944 weighed 5-½ pounds each; and 1652 pieces weighed 3.8 pounds each.

Six crates held and bound together with metal strip binders, were loaded three on top of three on the central portion of the four-wheel trailer and secured to the trailer by chains. These six boxes contained an aggregate of 4968 forgings weighing net 24,451 pounds and gross with crates 25,801 pounds. One box contained 326 forgings weighing 11 pounds each; 2216 forgings weighing 5-½ pounds each' were in three boxes; and 1437 forgings weighing 4 pounds each were in the fifth box. In the sixth box were 989 forgings weighing 2-½ pounds each, similar to the piece of metal (Exhibit D) which struck the plaintiff. The crate itself weighed 233 pounds and the net weight was 2496 pounds and the gross weight was 2719 pounds.

Roger's driver was unable to recall whether the sixth box was placed on top of the lower three boxes between the upper three or whether it was rear box over the three boxes on the bottom tier.

Enroute from Canton to Detroit, Rogers' driver did not follow the usual route to Toledo over Route No. 20 via Norwalk and Fremont, but in order to avoid the highway weighing scales on Route 20 proceeded northwest from Canton to the Lake Route 2, via Akron, Elyria, Lorain, Huron, Sandusky and Port Clinton. Near Huron, the driver noticed forgings bouncing off the road. He stopped at Red Gables near Sandusky and discovered a broken box on the tandem, which contained heavier forgings. He had observed the smaller forgings working out between the slats of the boxes on the trailer before reaching Red Gables. And at this stop he picked objects out from between the slats of a box on the trailer similar to Exhibit D. At Red Gables, the driver found that the bottom of the top box on the rear of the tandem had loosened, causing its load to sift down into the lower box. He took one of the large steel forgings from its box on the front of the tandem, went to the trailer and knocked off one of the top boards of the middle box on the upper tier. Ford contends it was this box and only this box that contained forgings similar to Exhibit D. However, the driver was unable to say whether parts exactly similar to Exhibit D were contained in the middle or rear box. The driver also knocked another board from a box on the tandem and with a spare board which he carried, repaired the defective box on the tandem. It is Ford's contention that from the evidence it may be inferred that Exhibit D bounced out and over the top of the box from which the driver removed the board rather

than that it escaped between the slats between the boards.

Inside Toledo at Navarre Park, Rogers' driver again stopped and again checked his load. His testimony as to whether at this point he found any loose metal on the bed of the four-wheeler is contradictory. He first testified that the loose pieces were only on the tandem. Under the guise of refreshing his recollection, plaintiff was permitted to cross-examine the driver, who was plaintiff's witness, concerning statements in his deposition, and he admitted finding loose pieces on the trailer. That there were loose pieces on the trailer after the accident is corroborated by two other witnesses.[4]

Since there were no eye-witnesses to the impact of the steel forging with plaintiff's car, this feature of plaintiff's case is supported almost exclusively by circumstantial evidence. Naturally, much to-do is made of inferences upon inferences by Rogers, in which Ford enthusiastically concurs.[5]

It is comparatively simple to understand the principle of no inference upon an inference as demonstrated in **Sobolovitz v. Lubric Oil Co., 107 Oh St 204,** but one of the most misunderstood and often inaccurately applied doctrines of the law is that which purports to preclude the basing of a presumption on a presumption, or an inference upon an inference. 95 A. L. R. 162. Even in the Sobolovitz case there was some evidence tending to negative the fact that the truck was operated at the time and place upon the defendant's business. In **Gedra v. Dallmer Co., 153 Oh St 258,** in entering final judgment, the court held:

"In such an action, if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."

We concur in the opinion in **Hall v. Ferro-Concrete Const. Co., 71 Oh Ap 545,** quoting **20 Amer. Juris. 169,** that when the

---

4. Rogers' driver was obviously not a hostile witness but on this appeal we are not concerned with the propriety of permitting a party to cross-examine his own witness under the guise of refreshing his recollection.

---

5. The alacrity with which Ford adopts Rogers' argument in Ford's favor, and rushes to embrace plaintiff's argument tending to shift liability to Rogers, presents a legalistic straddle *mirabile dictu.* Rogers, in turn, attempts to shift responsibility to Ford. Plaintiff is content and like the Cheshire cat, comfortably basks in the fire engendered by this controversy between defendants.

court seeks to apply the rule forbidding the basing of one inference upon another, what is meant is that an inference can not be based upon evidence that is too uncertain or speculative or which raises merely a conjecture or possibility. See also, par. 6, syllabus in **Boles v. Montgomery Ward Co., 153 Oh St 381.** The second paragraph of the syllabus in the Gedra case further clarifies the rule as follows:

"In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff, but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible."

Attempting to correlate and restate the basis of the rule. it may be said that if the cause of the injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, it is incumbent upon the plaintiff to produce evidence which will exclude the effectiveness of the cause or causes for which defendant is not liable.

As stated in Rogers' brief, the basic issue is whether or not the forging, that went through the windshield of plaintiff's car, came from a truck operated by one Carr, its driver, on the business of Rogers.

Rogers poses these questions:

1. Was it a Rogers' truck driven by Carr that passed Hurt at the time of the accident, and if so, was Rogers negligent at said time and place?

2. Assuming it was a Rogers' truck, was the forging part of the cargo and was it lost from the truck due to negligence of Rogers?

Rogers contends that there is no direct proof and that it is possible to reach an affirmative answer to these questions only by a series of inferences built upon one another.

As to the first question, admittedly many trucking units passed the scene of the accident on the afternoon in question. Neither the time of the accident nor the time Rogers' outfit passed the scene is fixed with exactitude. There is credible evidence from which it may be reasonably inferred that the accident occurred from 4 to 4:15 P. M. There is also credible evidence from which it may be reasonably inferred that the Rogers' outfit passed the scene some time after the accident. On the other hand, there is some evidence from which reasonable minds could infer that it was the Rogers' outfit which passed plaintiff's car.

We are inclined to agree with Rogers with respect to plain-

tiff's witness, Richardson, that "never did a witness with a fleeting glimpse (of Roger's outfit) ever see so much in so little time." But there it is, and upon this appeal we may not disregard it nor consider its weight. The only witnesses who saw a truck as it passed plaintiff were two men testifying for defendants who were driving 150 feet behind plaintiff, saw him go off the road, graze a telephone pole and stop in the field. They describe a tandem trailer with "stake" sides and that the outfit they saw did not have the appearance of the outfit shown in a picture of the Rogers' outfit. Since they testified from recollection after a lapse of two years, the jury might disbelieve their description of the truck they saw at the accident.

One of plaintiff's witnesses identified a Rogers' outfit three miles west of the accident. Another witness also saw a truck with some castings loose near its rear some two or three miles west of the scene of the accident. Neither witness could identify Carr as the driver of the outfit they saw. But there is direct evidence that Carr was the driver of the Rogers' outfit and there is no evidence tending to show that any other truck carried parts similar to Exhibit D past the scene at or near the time of the accident.

Upon a time factor in a case of this character, it is not incumbent upon a party to prove the time of an event with split second accuracy. Witnesses are not expected to testify with precision and accuracy with respect to the time an event occurs. If the evidence be such that reasonable minds may infer that a party was present at the time of the event, even though such evidence is in conflict, it is sufficient to submit the issue to the jury for determination. The same observation is made with respect to the identification of the passing truck as leased by Rogers.

Rogers asserts that there must be four inferences, each drawn upon the other, to establish that Exhibit D was part of its driver's cargo:

1. That there was no direct proof that Exhibit D was at Canton-Ford on August 20, 1948. It must be inferred.

2. There is no direct proof that if Exhibit D was at Canton-Ford it was put on Rogers' trucking outfit. Again this must be inferred and is possible only if the first inference was made.

But the answer to these assertions is that 989 pieces exactly similar to Exhibit D were loaded on Rogers' truck at Canton and transported to Detroit via Route No. 2. The record is devoid of any evidence that any similar parts were transported by any other haulers on the day in question. The possibility or probability that Exhibit D came from another source is therefore reasonably excluded.

3. Assuming the first two inferences, there is no direct proof that Exhibit D came from Rogers' truck, which presupposes a third inference upon an inference.

But again this so-called third inference may be drawn directly from the direct testimony that 989 similar pieces were loaded and transported on the Rogers' truck and that the driver saw parts bouncing off the road.

4. With the three inferences established, a fourth inference is required to reach the conclusion that Rogers was negligent.

But again this so-called fourth inference is drawn upon the direct testimony that pieces similar to Exhibit D were on the Rogers' outfit, and under the doctrine of res ipsa loquitur it is not incumbent on plaintiff to prove negligence by direct testimony. In the absence of any evidence that other haulers were engaged at the time and place in transporting similar parts, reasonable minds could well draw the inference upon the evidence that Rogers carried similar parts, that Exhibit D came from the Rogers load.

There is direct testimony that forgings identical with the one which struck plaintiff were made by Ford, loaded on the four wheel trailer of Rogers and were lying loose on the bed of the trailer prior to and after the accident. The direct evidence did not identify the particular type of forgings lying upon the trailer, but they were not the heavier forgings and were similar in type to the one which struck plaintiff. Rogers' driver saw pieces working out between the slats of the pallet boxes on the four-wheeler before he reached Sandusky.

Sec. 6307-103 GC, reads as follows:

"No vehicle shall be driven or moved on any highway unless such vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping therefrom except that sand or other substance may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a roadway in cleaning or maintaining such roadway."

Rogers contends that the statute does not apply in the absence of evidence that the truck was improperly constructed or loaded, and seeks to limit the application of the statute to the bulk of the load as distinguished from the separate pieces loaded, seeks to avoid liability by reason of the fact that the shipment as a whole was properly loaded and to shift the liability to Ford on account of defective boxes which permitted the smaller parts to slip out between the slats. Such narrow construction of the statute is untenable. The vehicle must be so constructed and loaded as to prevent **any** of its load from escaping therefrom. Furthermore, the doctrine of res ipsa loquitur applies in a case such as this where (a) the in-

strumentality causing injury was under the exclusive control of the defendant, and (b) the accident occurred under circumstances that in the ordinary course of events would not have occurred if ordinary care had been observed. The doctrine permits the jury but not the court to draw an inference of negligence. The rule, however, does not apply to Ford.

Rogers also contends that the truck which passed plaintiff could have been one of many others, some of which may have been carrying forgings and other possibilities (which Rogers refers to as probabilities) such as that the forging could have been picked up from the roadway between the two dual tires and that a bump in the road would jar it loose with such force as to hurl it through plaintiff's windshield; that the Rogers truck seen by Richardson could have belonged to another Rogers Company located in Texas. But admitting such possibilities, they were matters to be considered by the jury. Reasonable minds could well exclude these possibilities in the face of evidence that Exhibit D was made by Ford, a box of parts similar to Exhibit D was transported by Rogers' truck, which was identified as passing the scene of the accident approximately at the time it occurred, that parts carried on its journey were seen to drop into the highway and loose parts were seen on the trailer. In our opinion, the state of the evidence is such that reasonable minds could conclude that the forging came from the Rogers outfit.

Ford's position may be summarized as follows:

1. Rogers, the common carrier, had exclusive possession and control of the load throughout the journey—and sole responsibility therefor. Rogers is solely liable for its wilful alteration of the pallet boxes, solely responsible for its negligence and solely liable for its violation of §6307-103 GC.

2. Whether or not there was sufficient evidence to go to the jury against Rogers, the evidence under no circumstances reached a jury-question level against Ford "warranting exposure of Ford to the inevitable speculation of the jury."

We go along with the contention that Rogers had exclusive possession and control of the shipment throughout the journey and the sole responsibility for its transportation.[6]

But the evidence shows that Ford packed the forgings in

6. We do not agree with plaintiff's or Ford's contention that the high degree of care imposed upon a common carrier had any bearing on the duty owing plaintiff incident to the transportation. The writer of this opinion indulges a chuckle with regard to plaintiff's adoption of Ford's sophistry regarding Rogers' alleged common carrier liability.

the boxes and was made aware that the smaller forgings could and did slip through the slats. Ford also loaded the boxes on the tandem and trailer. Such loading, that is, the placing of the boxes, was supervised by Rogers. Since the section is directed against driving or moving the vehicle so constructed or loaded, Ford can not be charged with violation of the statute except possibly as an aider and abettor of the violation. Ford, as a reasonably prudent person, could have well apprehended that if the forgings got out onto the bed of the truck they could bounce into the highway and thereby constitute a hazard to the travelling public.

Ford also asserts that Rogers as a common carrier was under the obligation to transport the load over the highways in a careful and lawful manner, and to insure safe transportation of the freight, and its failure· to carry the shipment safely exonerates the shipper, particularly in view of Rogers' wilful alteration of its pallet boxes, which superseded any negligence on the part of Ford. But unless the act of Rogers in altering the boxes was the efficient, proximate cause of plaintiff's injury, such act was immaterial in removing any negligence on the part of Ford in furnishing boxes from which the forgings could escape.

We now proceed to Ford's second contention—failure of proof presenting a question for the jury.

Rogers' driver identified the forging which hit plaintiff as similar to the heavy forging which fell from the tandem and injured his foot, but he also said he saw round forgings, about 4 inches in diameter, weighing three to four pounds, bouncing on the road. He also said that at his stop at Navarre Park in Toledo he picked up and replaced in the boxes similar pieces to the one which injured plaintiff. His testimony is confused and contradictory in many particulars but for the purpose of this appeal those favorable to the plaintiff are determinative of the presence of a jury question. **Theater Co. v. Lautermilch, 118 Oh St 167.**

Ford also asserts that there is no evidence to show that the particular box in which parts similar to Exhibit D were placed was so constructed as to permit the parts to slip through the spaces between the sideboards; that neither the sideboards nor the spaces between were uniform, and that it was incumbent upon plaintiff to prove that Exhibit D slipped out between the slats of the particular box. But there is direct evidence that the smaller flat parts, including those similar to Exhibit D, did slip out not only on the occasion of this particular trip but on other trips, and that Rogers' driver had so advised an employe of Ford engaged in loading the outfits.

Ford also stresses the fact that the Ford boxes, when they left Canton, were new and in good order and when the driver repaired the box on the tandem the six boxes on the tractor were all intact. Ford argues that from Red Gables on, the Ford boxes ceased to exist and were replaced by Rogers' reconstructed boxes, one of which was a home-made box, the repaired box, and two others of which were boxes with a sideboard 6 to 8 inches in width knocked off by the driver. Quite naturally, the driver was unable to recall whether this sideboard was removed from the box containing parts similar to Exhibit D, but Ford proceeds to argue upon the assumption that it was removed from this particular box which it denominates a Rogers' box and demonstrates that this box "a little less than half full" would reach within 3 or 4 inches of the 9-inch open gap left by the torn out sideboard plus the former space between the boards.[7]

Although the driver said he did not think that with the board off at the box there was any way in which the parts could get over the side of the box from which the board was removed, Ford states that the forgings could easily bounce through 3 or 4 inches while being jolted over the rough road at high speed. One of plaintiff's witnesses said that he saw loose forgings on the bed of the trailer bouncing 3 or 4 inches. There was no evidence that any of the forgings on the load bounced out of the top of the boxes.

Ford's principal contention is that the evidence does not disclose with reasonable probability whether Exhibit D bounced out of the box or whether it slipped between the spaces of the sideboards. If from the evidence reasonable minds could infer that Exhibit D bounced out of the box or whether it slipped between the spaces of the sideboards. If, from the evidence, reasonable minds could infer that Exhibit D bounced through the open space, certainly in the face of the evidence that parts similar to Exhibit D could and did slip out between the sideboards, reasonable minds could more readily infer the latter. The Supreme Court has recently held that if the cause of an injury may be as reasonably attributed to an act for which a defendant is not liable as to one for

7. Ford's reference to the removal of a 6 or 8 inch sideboard leaving 8 inches plus a 1-inch space or 9 inches in its computation is argumentively excusable. There is a lot of argument in the briefs over the dimensions of the boxes and the location of the parts with respect to the top of the boxes with the sideboard removed. Plaintiff, for example, contends that the evidence discloses that the parts were 8 or 9 inches below the open space. Obviously this was a question for the jury.

which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant. **Gedra v. Dallmer Co., 153 Oh St 258.** This does not mean, however, that if there are other possibilities, or even other probabilities, plaintiff can not recover. It is only when the evidence is such that the cause may be as reasonably attributed to non-liability or liability does the rule apply. In the instant case, the box from which the sideboard was taken is not identified and the evidence is in conflict as to whether the parts would jounce out of the box. In appraising the evidence, that upon which Ford relies is a possibility and that tending to support plaintiff's theory is such that reasonable minds could infer that Exhibit D slipped out between the sideboards and was a proximate cause of plaintiff's injury.

In the instant case there is more than a scintilla of evidence to tag the "rat" as to its origin. Cf. Gedra v. Dallmer, supra, p. 265. A mere choice of probabilities is not presented, **Gerich v. Republic Steel Corp., 153 Oh St 463, 468,** or two separate and independent probable causes either of which may have been the efficient cause. Franklin v. Skelly Oil Co. 141 Fed. 568, because the evidence that the part slipped between the boards presents a reasonable probability while that to the contrary presents a possibility.

As heretofore indicated, we are not impressed with the contention that Exhibit D might have been on the highway for some time and was picked up between the dual tires and dislodged by a bump in the road. This also presents a conjectural possibility for the jury to consider.

A number of other contentions are raised by Rogers as well as Ford, to support their claim that by reason of the failure of proof, judgment should be entered for each defendant as a matter of law, but until the Supreme Court shall further clarify Gedra v. Dallmer, supra, and Goodrich v. Republic Steel Corp., supra, we conclude that as against Rogers, as well as Ford, there was some evidence to support each essential issue of plaintiff's claim.

The appeal of Rogers is dismissed and the judgment upon the verdict in favor of Ford is reversed, and the cause is remanded to the common pleas court with directions to enter judgment on the verdict against Ford without prejudice to the right of Ford to re-file its motion for a new trial.

CONN, J, SAVORD, J, concur.