Charles J. HERMAN, etc., Plaintiff

v.

CATTRON, INC., et al., Defendant

No. 3:99CV7352, 3:00CV7155.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 4, 2002.

**775**

Marc G. Williams–Young, Spitler & Williams–Young, Toledo, for Plaintiff.

D. Casey Talbott, Robison, Curphey & O'Connell, Toledo, Daniel R. Mordarski, Zeiger & Carpenter, Columbus, James R Knepp, II, Robison, Curphey & O'Connell, Toledo, James D. Lamp, Lamp O'Dell Bartram Levy & Trautwei, Huntington, WV, North Star BHP Steel Ltd. represented by David F. Cooper, Eastman & Smith, Toledo, for Defendant.

## ORDER

CARR, District Judge.

These are consolidated suits arising from the death of Barbara Corbin, an employee of the defendant North Star BHP Steel, Ltd. (North Star). Ms. Corbin was a member of North Star's shipping team. On the day of her death, March 13, 1998, she was using a remote control device manufactured by the defendant Cattron, Inc. (Cattron) to operate a locomotive supplied to North Star by the defendant Relco Locomotives, Inc. (Relco).

Ms. Corbin was last seen walking alongside and to the west of the second of eleven cars being pushed to a building to be loaded with steel coils for shipment to a North Star customer. The train was "inching" along. Ms. Corbin used her radio to notify other shipping team members that the train would be entering the building where the load was to be picked up.

At some point before the train came into the building, Ms. Corbin would have had to cross from the west to the east side of the track, where, inside the entrance to the building, there was a switch for an audible warning and flashing light.

The train did not arrive at the building. A co-worker was unable to reach Ms. Corbin by radio. Another employee went to check the rail spur. He found Ms. Corbin's lifeless body beneath, and about thirty to thirty-five feet from the front end of the lead rail car. The train was stopped about 290 feet from the entrance to the building when her body was found. Ms. Corbin had been struck by the lead car.

Ms. Corbin was face up, with her upper torso between the rails and her legs and feet outside the rails on the east side of the track. Her spine had been severed and her heart torn loose. There was no

visible blood. Death appeared to have been instantaneous, or nearly so.

The cars belonged to the Grand Trunk Railroad, which was, but no longer is, a defendant in this case. They were covered cars, with standard appurtenances, including ladders on their sides. North Star employees, including Ms. Corbin, would routinely stand on the ladders while moving cars on North Star's premises.

Cars could be moved either by two persons working together—one operating the locomotive manually, while the other, either on the ground near the tracks or riding on a car, directing the movement and operating switches—or by a single person using, as Ms. Corbin was, the Cattron remote control device.

North Star did not have a policy or work rule that preferred two person movements over one person movements, or vice-versa. With two person movements, miscommunicated or misunderstood hand signals or radio communications could endanger the safety of the person on the ground or car. As one employee testified in his deposition, "I don't want someone running over me." Single person movements were, according to a post-accident OSHA report, more commonplace.

The device, which weighs about five pounds, and is about six inches high and somewhat less than ten inches wide and seven inches deep, is worn by the employee conducting the movement. To transmit signals to the locomotive, the employee would have to depress a "push to operate" (PTO) bar. Release of the bar would automatically cause the train's brakes to engage. According to one employee, the hardest part of using the Cattron device was holding onto the car while operating the remote controller.

Nonetheless, riding moving cars occurred, according to the estimate of North Star's general shipping supervisor, about ninety to ninety-five percent of the time. North Star prohibited riding on the front of a car.

To comply with that prohibition, an employee electing to ride while using the Cattron device would have to stand on a side ladder, using one hand or arm to hold onto the car, and the other hand to keep the PTO bar depressed or otherwise operate the Cattron device. In this position, the employee was using a "three point stance"—i.e., when riding with both feet and a hand or arm on the ladder, the employee was in three point contact with the car.

Plaintiff claims each defendant is liable for Ms. Corbin's death, because: 1) North Star committed an intentional tort by requiring her to perform her assigned duties in circumstances in which it knew that injury was substantially certain to occur; 2) the design of Cattron device was defective when it was supplied to Relco because the risks associated with its design outweigh its benefits, and, as well, because no warnings or instructions came with the device to avoid the risks of using it while riding a moving car; and 3) the Relco locomotive, with the Cattron receiving unit installed, was unreasonably dangerous, and Relco provided neither warnings nor adequate instruction and training to ensure safe remote operation of the locomotive.

Pending are motions by all defendants for summary judgment. For the reasons that follow, I conclude that, even if North Star otherwise could be found to have committed an intentional tort, or Cattron or Relco otherwise might be strictly liable under Ohio's product liability provisions, plaintiff cannot show that it is more likely than not that such tortious conduct caused Ms. Corbin's death.

## Discussion

As noted, no one saw Ms. Corbin after she was seen walking on the west side of the train as it headed toward the building to be loaded. No one knows where she was immediately prior to her death, or how she came to be on the track before the lead car struck and killed her.

Plaintiff and her experts posit four alternative circumstances leading to Ms. Corbin's being in the lead car's path:

1. Ms. Corbin was on a side ladder and fell forward in the path of the lead car either as she attempted to operate the remote control (and lost hold while trying to do so) or the PTO bar was activated, causing the locomotive to brake automatically, throwing Ms. Corbin into the car's path;

2. Ms. Corbin was, contrary to North Star's work rules, riding on the front of the lead car, or trying, contrary to safety training, to climb on or off the front of the car as it was moving;

3. Ms. Corbin was walking between the rails, or crossing, as she had to at some point to take the train into the building to be loaded, from the west to the east side, and she came too close to the moving train, contrary to her safety training; or

4. Ms. Corbin, who had been treated for depression, intentionally stepped in front of the train.

None of the parties suggests that the fourth possibility was likely, and all have ruled it out by consensus.

But there is no rational basis for a trier of fact to choose between the three other options from the circumstantial and other evidence in the record: no one of those scenarios explains more likely than another how Ms. Corbin came to be in mortal peril.

An Ohio appellate court recently set forth the black letter principles applicable to the issue of causation in this case:

[A] plaintiff must present evidence upon which a trier of fact may reasonably determine that it is more likely than not that the negligence of a defendant was the direct or proximate cause of the plaintiff's injury. It is also well-settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the breach of duty caused the particular damage is not sufficient as a matter of law. Further, a plaintiff must establish proximate cause by a preponderance of the evidence.

*Whiting v. Ohio Dept. of Mental Health,* 141 Ohio App.3d 198, 202, 750 N.E.2d 644 (2001) (citations omitted).

The leading case on the issue of proximate cause and multiple possibilities is *Gedra v. Dallmer Co.,* 153 Ohio St. 258, 91 N.E.2d 256 (1950). In that case plaintiff sought damages for a rat bite incurred when she was a patron in the defendant's theater. The record showed that there were nearby restaurants and grills which served food and were breeding places for rats. The theater owner, the court pointed out, had no control over those premises. Thus, it was

equally certain that the rat could have originated from premises over which defendant had no control and that it got into defendant's theater without any negligence on the part of defendant. In such a situation the law is that there can be no guessing by either court or jury. There must be some evidence, direct or inferential, that the agency which produces an injury is the result of the negligence of a defendant before he can be held liable therefor, and if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for

which he is liable, the plaintiff has not sustained the burden of proving that his injury is the direct result of the defendant's negligence. . . .

[It] is not enough for the plaintiff to prove that the negligence might perhaps have caused the injury. If, for example, the injury complained of might well have resulted from any one of many causes, it is incumbent upon the plaintiff to produce evidence which will exclude the operation of those causes for which defendant is under no legal obligation. If the cause of the injury to the plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of fastening tortious conduct upon the defendant.

153 Ohio St. 258 (citation omitted).

The Ohio Supreme Court considered its holding in *Gedra* in *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 326 N.E.2d 651 (1975), which involved a suit by one warehouse tenant against another tenant, in which the plaintiff alleged that the negligence of an employee of the defendant caused a fire. In support of its claim the plaintiff offered circumstantial evidence (namely, the defendant's employee had been observed smoking near the area of the fire's origin, the fire started shortly after the employee was seen smoking, flammable materials were located nearby, and the employee had to extinguish the cigarette somewhere) and testimony by experts (namely, that that was the point of origin of the fire). The defendant asserted that careless smoking was only one of several equally probable causes, and that, in light of *Gedra*, plaintiffs had to eliminate other possible causes, such as spontaneous combustion, arson, or sparks from a locomotive.

The court rejected the defendant's contention, holding that the evidence of the causal link between the apparent negligence of the defendant's employee and the fire sufficed to relieve the plaintiff of eliminating other causes. The rule in *Gedra*, the court stated

holds that where the facts from which an inference of probable proximate cause must be drawn are such that it is as reasonable to infer other causes, plaintiff has failed to supply proof of probable [sic] cause. Where plaintiff has only presented proof that the actual cause was one of a number of possibilities, to enable an inference to be drawn that any particular cause is probable, the other causes must be eliminated.

The application of this rule depends upon the facts of each individual case.

\*　　\*　　\*　　\*　　\*　　\*

The distinction between those possible causes which, as a matter of law, render the drawing of an inference of negligence impermissible, and those which involve the weighing of evidence by the jury, can best be illustrated by an example.

In the instant case, plaintiffs could prove all the facts they allege and still not make out a case, if it were also proved that other persons were smoking near the closet, who were not employees of defendant, and that it was as reasonable to infer that one of their cigarettes caused the fire. In that hypothetical case, plaintiffs' evidence, no matter how convincing, would not warrant an inference that defendant's negligence was responsible for the fire, for it would be a matter of speculation as to who had tossed the guilty cigarette butt. Because an inference of defendant's negligence would be impermissible on those facts, plaintiffs would have the burden of eliminating the carelessness of the other

smokers in order to make out a case for the jury.

42 Ohio St.2d at 127–29.

The rule in *Gedra*, the Ohio Supreme Court noted in *Stone v. Davis*, 66 Ohio St.2d 74, 82, 419 N.E.2d 1094, (1981), "simply means that [plaintiff's] evidence must be such that a trier of fact may reasonably determine that it is more likely than not that the defendant's negligence was the cause of the plaintiff's injury."

The circumstances of this case are analogous to those in *Glabecki v. Williams*, 1991 WL 12949 (1991). Plaintiff in that case brought a wrongful death action against several defendants, charging them with negligence that could have caused a boater's occupant, whose vessel was tied up near the Flats in Cleveland, to drown. The victim had left the boat during the nighttime. Though one of his companions heard a splash, no one saw the victim's fall into the Cuyahoga River.

Like the plaintiff here, the plaintiff in *Glabecki* asserted various claims against several defendants, alleging that: 1) the boat owner failed to illumine the boat, warn the decedent of the dangerous embankment, and ensure a safe means of egress and ingress; 2) the restaurant failed to illumine the area in which it encouraged its patrons to moor their vessels, provide a safe means of access, and warn about the dangers; 3) the lessee of the property failed to provide adequate docking facilities or illumination and warn of the dangers; and 4) the property's owner improperly permitted the restaurant's patrons to use the area for docking. Upholding summary judgment for all defendants, the court stated:

> From the undisputed facts of record, there is no evidentiary basis to determine how or precisely where the drowning occurred. Thus, plaintiffs could assert only that the decedent may have drowned due to certain causes produced by the separate defendants, and plaintiffs could not disprove that he drowned due to any factors outside of the defendants' control. Accordingly, any number of factors remain as possible causes of the drowning, and because proximate cause cannot be based on speculation, this in turn causes a failure of proof as to any particular cause created by any particular defendant.

1991 WL 12949, *3 (1991) (citation omitted).

The facts of this case likewise are similar to those in *Salem v. Koval*, 1999 WL 1129586 (1999), in which plaintiff had fallen from a golf cart, been injured, and sued the driver, claiming his negligence had caused the fall. Plaintiff testified that, as the car was being driven fast, she felt it jog or jerk before her fall, but she had no idea what caused it to do so. "Although the parties have spent much energy debating whether" plaintiff had shown negligence on the part of the driver, the court held that it was "unnecessary to enter into their debate since a review of the materials submitted to the trial court conclusively demonstrates appellant provided no evidence to establish any causal connection between [the driver's] action and her injury." 1999 WL 1129586, *5; *see also Wesley v. McAlpin Co.*, 1994 WL 201825, *3 (Ohio App.) ("When there are several conceivable causes for a fall, a plaintiff's negligence claim against an owner or occupier ordinarily fails if the plaintiff cannot testify as to the specific cause of the fall."); *Frauenthal v. Burke*, 1991 WL 39781, *2 (1991) ("If the cause of [injury] may be as reasonably attributed to things for which [defendant] is not responsible as to things for which he is responsible, [plaintiff] has not sustained his burden of proving that his alleged damages are a proximate result of the [defendant's] negligence. . . .").

In this case, no one, including the plaintiff, knows what caused Ms. Corbin to be in the path of the train just before it struck her. Plaintiff's experts assume that she was riding a side ladder, and they premise their theories of defendants' liability on that assumption. To accept those theories, the jury must be able to find that Ms. Corbin was there, rather than elsewhere, by a preponderance of the evidence.

No rational trier of fact can make that finding because, no matter how convincing the plaintiff's evidence may be that the defendants acted tortiously, there is no rational basis on which a jury could find that Ms. Corbin was on the side ladder, rather than elsewhere, just before she came into the train's path. Although the record shows that employees usually rode on the side ladder, it does not show that they always did so. On the other hand, plaintiff was last seen walking on the west side, and had, at some point to cross the tracks to the east side before completing the train's movement. The circumstantial evidence that plaintiff may have been riding the side ladder is, therefore, just as conclusive (or, more accurately, inconclusive) as the circumstantial evidence that plaintiff was walking when she entered the train's path.

Absent other evidence that Ms. Corbin was riding the car, it is just as likely, on the basis of the record before this court, that she never was on the car, or, if once on the car, had dismounted voluntarily and safely, and thereafter walked onto the tracks.

## Conclusion

The holding in *Gedra* is of limited applicability: it "does not mean that if there are other possibilities, or even other probabilities, plaintiff cannot recover. It is only when the evidence is such that the cause may be as reasonably attributed to non-liability or liability does the rule apply." *Hurt v. Rogers Transp. Co.*, 116 N.E.2d 21, 66 Ohio Law Abs. 106, 120 (1952).

This is such a case. Even if the jury could find that one or more of the defendants acted tortiously toward Ms. Corbin, they cannot be held liable because the jurors could not find that it was more likely than not that she was on the side ladder just before she came into the train's path. That finding is crucial to plaintiff's recovery; because it cannot be made, he cannot prevail.

In light of the foregoing, it is

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are granted.

So ordered.