14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Gary SINDELIR and Gail Sindelir, Plaintiffs-Appellants,
v.
R.J. CORMAN CONSTRUCTION and Hulcher Services, Inc.,
Defendants-Appellees.
 No. 93-3042.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1993.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In this diversity action, plaintiffs Gary and Gail Sindelir, husband and wife, appeal the entry of summary judgment in favor of defendants R.J. Corman Construction and Hulcher Services, Inc. Corman and Hulcher had contracted with Gary Sindelir's employer, Consolidated Rail Corporation ("Conrail"), to move and rerail train cars at a derailment site. Sindelir contends that he was injured when he attempted to repair damage to the railroad's signal wires, damage which was allegedly caused by the negligence of one or both of the defendants. On appeal, the question is whether Sindelir presented evidence that each of the defendants engaged in tortious conduct sufficient to defeat the motions for summary judgment. We conclude that he did not, and affirm the judgment of the district court.
 
 I.
 A.
 
 2
 Gary Sindelir was employed by Conrail as signal maintainer. On December 30, 1989, he was instructed by Conrail to go to the site of a train derailment and assess the damage to the signal equipment. When Sindelir arrived, he saw that one signal line pole had been completely broken at its base, but was still standing erect because the wires were attached to the pole and were supporting the pole from above.
 
 
 3
 Corman and Hulcher were hired by Conrail to rerail the derailed train cars and clean up the derailment site. Corman employees and equipment arrived at 11:30 p.m. on December 30, and Hulcher employees and equipment arrived at approximately 5:00 the next morning. Corman and Hulcher were the only companies operating heavy equipment at the site.
 
 
 4
 At approximately 7:30 a.m. on December 31, Sindelir was informed that the pole next to the first broken pole was broken and lying flat on the ground. Sindelir had seen workers climbing this pole earlier in the night, and concluded that it had been broken between 5:00 and 7:30 a.m. on December 31. Sindelir testified at deposition that he did not know who broke the second pole, but assumes that it must have been either Corman or Hulcher employees. Corman and Hulcher employees denied that they had struck the second pole or caused it to fall.
 
 
 5
 The signal wires were still attached to both poles when the second pole went down. At that point, the first pole was pulled down by the wires and was leaning on a fence with its top eight feet off the ground and its arm extending up another five feet. The problem came to Sindelir's attention when he was informed that a bulldozer dragging one of the derailed cars had become snagged in the signal wires. According to Sindelir, if the wires had been broken, all train traffic between Marion, Ohio, and Union City, Indiana, would have been stopped until the wires could be repaired. Sindelir also testified that the rerailing equipment could not operate in the area unless the wires were loosened from the first pole so that there would be adequate clearance for the equipment.
 
 
 6
 Sindelir instructed the bulldozer operator to stop and then assessed the situation. He determined that the first pole was sufficiently stable to climb, and walked up the pole to try to free the lines. When he reached the top, he held the wire with his left hand and used his right hand to try to free the wire from an insulator on the pole. Sindelir knew that there was tension on the line, but candidly admits that he misjudged the amount of tension. The wire released from the insulator sooner than he had calculated, causing the wire to shoot up into the air over Sindelir's head, yanking his left arm along with it, causing the injuries for which he sought damages.
 
 
 7
 Sindelir testified that he alone made the decision to attempt to release the signal wires. No one from Conrail or either of the defendants instructed him to try to free the lines in the manner he selected. All activity at the pole had stopped while Sindelir tried to free the wire. No one jostled the pole or the wires while he was working.
 
 
 8
 There is conflicting evidence whether Hulcher employees were working on the side of the track where the accident occurred. Three Hulcher employees testified at deposition that they were not working in the area where the poles came down. However, a Conrail employee testified that he saw Corman and Hulcher workers cross over and work both sides of the track, although he also admitted that he could not identify who worked for Hulcher and who worked for Corman. A Corman employee testified that Hulcher operated on the pole side of the tracks.
 
 B.
 
 9
 Sindelir filed suit, contending that Corman or Hulcher broke the pole and caused further damage to the signal wires. Sindelir alleged that each defendant operated below the standard of care owed by a contractor to employees of another; negligently failed to supervise or instruct its employees in the safe operation of equipment; and negligently caused its equipment to become entangled in the wires and to strike a pole. Sindelir sought $250,000 against each defendant, and his wife Gail sought $75,000 against each defendant for loss of consortium.
 
 
 10
 One year after suit was filed, and following the close of discovery, defendants moved for summary judgment. There is no contention that further discovery was necessary or that the time allotted was inadequate to prepare the case. At the point these motions were filed, the identities of the bulldozer driver and the heavy equipment operator allegedly responsible for knocking down the second pole were still unknown.
 
 
 11
 The district court concluded that Sindelir's failure to submit evidence as to which of the defendants caused the conditions that led to his injuries prevented him from demonstrating the essential elements of negligence or proximate cause. The court refused to relieve Sindelir from the burden of demonstrating causation through application of the doctrine of alternative liability, holding that the doctrine only applies where there is evidence of tortious conduct on the part of both defendants. The court distinguished Huston v. Konieczny, 52 Ohio St.3d 214, 556 N.E.2d 505 (1990), where a plaintiff injured in a car accident was relieved of the burden of proving which of the defendants who had supplied beer to teenagers at a party had given beer to the particular teenager who caused the accident, interpreting that case as a narrow departure from the well-established rule that concurrent negligence must be shown in alternative liability situations.
 
 II.
 
 12
 Sindelir claims that the district court erred in concluding that he did not present a prima facie case of negligence as to each defendant. As evidence that the court erred with respect to his claims against Corman, Sindelir points to the denials of the Hulcher employees that they operated on the pole side of the tracks, concluding that Corman must have caused the damage to the pole and the wires. As evidence that the court erred with respect to his claims against Hulcher, however, Sindelir points to the testimony of the Conrail and Corman employees that Hulcher was operating on the pole side of the tracks, concluding that the Hulcher employees were not telling the truth and were covering up their tortious acts. Finally, Sindelir claims that the district court erred in not applying the alternative liability doctrine to relieve him of the burden of demonstrating which of the two defendants knocked down the second pole and snagged the train car in the signal wires.
 
 
 13
 A federal court deciding a diversity case under state law must apply the law of the state's highest court. Ray Indus., Inc. v. Liberty Mut. Ins. Co., 974 F.2d 754, 758 (6th Cir.1992). In assessing whether summary judgment was warranted, however, the court looks to federal law. Under Fed.R.Civ.P. 56(c), summary judgment is mandated, after an adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The essential question as to each of Sindelir's claims of error in this case is whether he presented sufficient evidence of tortious conduct on the part of each defendant to avoid the entry of summary judgment.
 
 A.
 
 14
 In order to establish actionable negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting therefrom. Menifee v. Ohio Welding Prod., Inc., 15 Ohio St.3d 75, 472 N.E.2d 707, 710 (1984). The two acts of alleged negligence are the breaking of the second pole and the snagging of the signal wires by the bulldozer operator. There is conflicting evidence in the record regarding which defendant operated in the vicinity of the second broken pole. There is no affirmative evidence that either defendant was responsible for the damages to the pole or the snagging of the wire. At best, and taking the facts in the light most favorable to the plaintiff, we can assume only that one of the two defendants was responsible for one or both of the alleged acts of negligence.
 
 
 15
 Sindelir relies on Hurt v. Charles J. Rogers Transp. Co., 164 Ohio St. 329, 130 N.E.2d 820 (1955), in support of the proposition that the "parallel inferences" drawn from the facts are sufficient to present the case to the jury on the theory that one of the defendants must have caused his injury. In Hurt, the plaintiff was injured when the car which he was driving passed a truck and steel forging was thrown from the truck and crashed through the plaintiff's windshield, striking him in the face. The plaintiff presented evidence that the defendant's truck was loaded with forging material at Ford Motor on the day of the plaintiff's accident, and was the only one so loaded; that the truck was driving on the highway in question, loaded with the forgings; that forgings were seen to fall from the truck and bounce as high as the telephone wires; that loose parts were found on the truck itself; and that the particular forgings which struck plaintiff's car were Ford forgings like those transported by the defendant. The court held that an inference based only on another inference may not be indulged by a jury, but that parallel inferences may drawn from the same set of facts. Based upon the facts recited above, the court held that the jury could permissibly infer that the forgings from defendant's truck were those that struck the plaintiff and that the defendant was negligent.
 
 
 16
 Hurt is readily distinguishable due to the facts demonstrating tortious conduct on the part of the truck driver. This is the evidence that lacking in this case. Sindelir asks the court to reverse the entry of summary judgment against him on the assumption that one of the defendants must have been culpable. However, "where the cause of an injury may as reasonably be an act for which defendant is not liable as one for which he is liable, the plaintiff has not sustained the burden of showing that his injury was a proximate result of the negligence of the defendant." Hurt, 130 N.E.2d at 822 (citing Gerda v. Dallmer Co., 153 Ohio St. 258, 91 N.E.2d 256 (1950)).
 
 
 17
 Thus, only if Sindelir is relieved of the customary burdens of proof imposed on a negligence plaintiff can he prevail in this appeal. He contends that the doctrine of alternative liability operates to relieve him of the burden of proving each defendant's negligence.
 
 B.
 
 18
 The doctrine of alternative liability, as adopted in Ohio, is based on the Restatement (Second) of Torts Sec. 433B (1965):
 
 
 19
 (1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.
 
 
 20
 ....
 
 
 21
 (3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each actor to prove that he has not caused the harm.
 
 
 22
 Comment f to section 433B explains that the reason for the exception to the customary burden of proof is the "injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm." (Emphasis added.) Thus, the doctrine applies only where the plaintiff sustains his burden of proving that "each of two or more actors has acted tortiously, and that the harm has resulted from the conduct of some one of them." Restatement (Second) of Torts Sec. 433B cmt. g (1965).
 
 
 23
 The operation of section 433B is set forth in two illustrations:
 
 
 24
 9. A and B, independently hunting quail, both negligently shoot at the same time in the direction of C. C is struck in the face by a single shot, which could have come from either gun. In C's action against A and B, each of the defendants has the burden of proving that the shot did not come from his gun, and if he does not do so is subject to liability for the harm to C.
 
 
 25
 10. Over a period of three years A successively stores his furniture in warehouses operated by B, C, and D. At the end of that time A finds that his piano has been damaged by a large dent in one corner. The nature of the dent indicates that it was caused by careless handling on a single occasion. A has the burden of proving whether the dent was caused by the negligence of B, C, or D.
 
 
 26
 Restatement (Second) of Torts Sec. 433B, illus. 9 and 10.
 
 
 27
 Ohio first recognized the alternative liability doctrine in Minnich v. Ashland Oil Co., 15 Ohio St.3d 396, 473 N.E.2d 1199 (1984). The court's syllabus adopts Restatement Sec. 433B(3) verbatim. In Minnich, a worker died in an explosion which occurred while he was using ethyl acetate to clean a printing press chain. Each defendant had supplied ethyl acetate to the decedent's employer, allegedly in a defective condition due to the failure to warn that the chemical had flammable and explosive properties. The plaintiff was unable to prove which of the two defendants had supplied the chemical in use on the day of the explosion, and the trial court entered summary judgment against the plaintiff for this reason. The Ohio Supreme Court reversed, adopting Restatement Sec. 433B, and stating that "fairness demands application of that doctrine to situations similar to the case at bar." 473 N.E.2d at 1200. The court emphasized, however, that the plaintiff must still prove that two or more defendants committed tortious acts and that he was injured as a proximate result of the wrongdoing of one of them. "Only then will the burden shift to the defendants to prove that they were not the cause of plaintiff's injuries. This doctrine does not apply in cases where there is no proof that the conduct of more than one defendant has been tortious." Id. Accord Goldman v. Johns-Manville Sales Corp., 33 Ohio St.3d 40, 514 N.E.2d 691 (1987), syl. Sec. 1.
 
 
 28
 Sindelir contends that application of the alternative liability doctrine in this case is authorized by Huston v. Konieczny, 52 Ohio St.3d 214, 556 N.E.2d 505 (1990). In Huston, the plaintiff was injured as a result of the drunk driving of an underage friend who had been supplied beer at a party held at the home of two of the defendants. Most of the party-goers were under the legal drinking age, and the defendants either supplied beer at the party or provided the site for the party with the knowledge that beer would be consumed by the teens. The court reiterated that the plaintiff must prove that two or more defendants committed tortious acts, and stated that the plaintiff could recover if he could show that any of the named defendants supplied beer to underage persons and that Huston was injured as a result of the wrongdoing of at least one of the defendants. 556 N.E.2d at 510.
 
 
 29
 The district court's conclusion that Huston did not modify Ohio's traditional alternative liability requirements is sound. Huston does not purport to overrule existing precedent, and is properly characterized as a case in which all of the defendants were negligent in providing alcohol at a party populated largely by underage drinkers.[1]
 
 
 30
 Moreover, if this case is compared to the illustrations quoted above from the Restatement, the act of bringing beer to a party of teenagers is analogous to the act of shooting in the direction of another, with the result that each person providing beer at the party bore the burden of proving that he did not supply the beer to the drunk driver who caused the plaintiff's injuries.
 
 
 31
 In sum, the district court correctly concluded that the doctrine of alternative liability, as adopted and applied by the Ohio Supreme Court, requires that a plaintiff prove that both defendants engaged in tortious conduct in order to be relieved of the burden of proving which of them proximately caused the injury. Sindelir did not make a showing sufficient to establish this element of his case, and the defendants' motions for summary judgment were properly granted.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ohio's adherence to the holdings of Minnich and Goldman is also demonstrated by Crawford v. Sanwardeker, 1992 Ohio App. LEXIS 303 at * 23 (1992), where the court stated that the trial court correctly refused to give plaintiff's requested instruction on alternative liability which would have required plaintiff to prove only that at least one of the defendants was negligent