Stewart, J.
 

 Defendant cites several grounds of error and strenuously argues its claim of error as to the admission of the testimony of a witness with reference to seeing and being bitten by a rat in defendant’s theater four months or more before the rat bite of
 
 *262
 
 which plaintiff complains, which present a serious question. Surely, such remote evidence could not have been properly received for the purpose of proving plaintiff’s case and, if admissible at all, should have been limited to evidence of knowledge of the rats in its theater upon the part of defendant. It is claimed by defendant that the testimony was not so limited by the trial court. However, in light of the view we have taken of the case it is not essential that we discuss any of the assigned errors except that the Court of Appeals erred in affirming the judgment of the trial court in its refusal to sustain defendant’s motion for a directed verdict at the conclusion of plaintiff’s evidence, at the conclusion of all the evidence, and in overruling defendant’s motion for judgment notwithstanding the verdict. In arriving at a just conclusion in the instant case under correct principles of law, there are a few elementary principles of the law of négligence which we must bear in mind.
 

 Both plaintiff and defendant are agreed and properly so that defendant was not an insurer of plaintiff’s safety but owed to plaintiff the duty of ordinary care to guard her against danger while she was a patron of defendant’s theater and to that end defendant was required to exercise ordinary care to render its premises reasonably safe.
 
 Cincinnati Base Ball Club Co.
 
 v.
 
 Eno,
 
 112 Ohio St., 175, 147 N. E., 86;
 
 Painesville Utopia Theatre Co.
 
 v.
 
 Lautermilch,
 
 118 Ohio St., 167, 168, 160 N. E., 683.
 

 • In order for plaintiff to recover in the instant case, it was incumbent upon her to show by a preponderance of the evidence not only that defendant failed to exercise ordinary care to render its theater reasonably safe, but that her injuries occurred as a proximate result of such failure. As has been stated, plaintiff offered the testimony of an exterminating expert to the effect that his method of extermination would make a
 
 *263
 
 building practically rat free, whereas defendant called an exterminating expert who testified as follows:
 

 “Q. Now, then, in your long experience, is there anything unusual — I do not know whether I asked you, I think maybe I did, but I want to make certain — in your long experience over 20 years, working with rodents and all insects of every kind and nature, is there anything unusual with a theater having at least three episodes in a year, of a rat getting into the theater? * * * A. No, not at all.
 

 “Q. Now, will you sort of elaborate a little more, Mr. Studier, or tell us anything — if you have anything further to add? A. Well, I mean it is an understood fact that no matter how tightly you ratproof a building that is built with doors down flush with the sill and so on, no matter how good you do that, after all theater doors are opened just thousands of times a day, and their back doors and shipping doors of necessity, just like any other industrial building, and, as I said before, I have served the very, very finest bakeries where that is really something important, and you just can’t help it; it is one of those things you can’t help. * * *
 

 “Q. Well, now, then, coupling all that I have told you before, and that what you have observed today, what is there over there at the Palace theater that they don’t have — and assuming that it was that way in 1946, in the way of rat prevention, that they don’t have, that they should have, or something that they have, that they should not have, will you tell us? A. They couldn’t do anything more than they are doing. They just couldn’t do any more than they are doing. I do not know what they could do. I mean it is just common sense, there is nothing more they could do. ’ ’
 

 Defendant’s evidence disclosed that it kept cats on the premises at night. They were fed in the morning, which plaintiff claims in argument prevented them
 
 *264
 
 from being hungry enough to catch rats. Defendant claims feeding was necessary because there were no rats around to be caught and, therefore, the cats had to be fed otherwise.
 

 However, let us assume without deciding that there was sufficient evidence to go to the jury on the question of defendant’s failure to use ordinary care to make its theater ratproof or that its failure to utilize the services of plaintiff’s rat exterminator witness might be considered negligence upon its part. There still remains the question whether there is any proof that plaintiff’s injuries were a direct result of such failure upon defendant’s part. If defendant’s theater were in a field which defendant owned or controlled or if it were surrounded by other property where there were no rats, or if it were improbable or unlikely that rats could come into defendant’s theater from premises over which defendant had no control and without any negligence upon the part of defendant, it could well be argued that the rat which bit or scratched plaintiff originated in defendant’s theater and, therefore, if defendant were negligent in not taking proper precautions to keep rats away, defendant would be liable for the injuries caused to plaintiff by the rat bite. However, that situation is not the case in the instant action. As we have said, there were restaurants and grills in the neighborhood of defendant’s theater, over which defendant had no control and which furnished a breeding place for rats.
 

 In the conduct of its business, defendant’s doors had to be opened much of the time and the record is clear that rats from these neighboring premises had access to defendant’s theater. There is no proof that the rat which caused plaintiff’s injuries had not come into the theatre immediately before biting or scratching plaintiff. Plaintiff’s chief witness as to defend
 
 *265
 
 ant’s negligence, namely, the exterminating expert, testified on cross-examination as follows:
 

 “Q. And would you say that the Palace theater is, undoubtedly, surrounded by a number of large places where it is a common breeding place for rats, where they can obtain food? A. Yes.
 

 “Q. And so it is an almost continuous spot? A. Yes.
 

 “Q. And so no matter how much poison you could put around there, Mr. Hersh, you could put it there probably every five minutes, and there is still the probability, if your back is turned, being in a location of that kind, that one of those rats might run through the door? A. The probability, yes.
 

 “Q. And, of course, you may clear your buildings of rats and have them just as clean as the judge’s table there and in one glance see a rat come in from the street, is that right? A. Yes.
 

 “Q. And so there is not any way you could make a place absolutely rat free in downtown Youngstown, is there? A. No, there is not.”
 

 Assuming the rat which injured plaintiff could have originated in defendant’s theater, it is equally certain that the rat could have originated from premises over which defendant had no control and that it got into defendant’s theater without any negligence on the part of defendant. In such a situation the law is that there can be no guessing by either court or jury. There must be some evidence, direct or inferential, that the agency which produces an injury is the result of the negligence of a defendant before he can be held liable therefor, and if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of proving that his injury is the direct result of the defendant’s negligence.
 

 
 *266
 
 In the case of
 
 Cleveland Terminal & Valley Rd. Co.
 
 v.
 
 Marsh,
 
 63 Ohio St., 236, 58 N. E., 821, 52 L. R. A., 142, the fifth paragraph of the syllabus reads:
 

 “To establish negligence, there should be either direct proof of the facts constituting such negligence, or proof of facts from which negligence may be reasonably presumed. There should be no guessing by either court or jury.”
 

 In 38 American Jurisprudence, 975, Section 285, it is stated:
 

 “In showing that the negligence charged was the proximate cause of the injury, it is not enough for the plaintiff to prove that the negligence might perhaps have caused the injury. If, for example, the injury complained of might well have resulted from any one of many causes, it is incumbent upon the plaintiff to produce evidence which will exclude the operation of those causes for which defendant is under no legal obligation. If the cause of the injury to the plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of fastening tortious conduct upon the defendant.”
 

 In the case of
 
 Ash
 
 v.
 
 Childs Dining Hall Co.,
 
 231 Mass., 86, at page 89, 120 N. E., 396, 4 A. L. R., 1556, Chief Justice Rugg said:
 

 “There is nothing in the record from which it can be inferred that the harm to the plaintiff resulted directly from any failure of duty on the part of the defendant. The precise cause of her injury is left to conjecture. It may as reasonably be attributed to a condition for which no liability attaches to the defendant as to one for which it is responsible. Under such circumstances the plaintiff does not sustain the burden of fastening tortious conduct on the defendant by a fair preponderance of all the evidence, and a verdict ought to be directed accordingly.”
 

 
 *267
 
 From the undisputed evidence in this case, in fact from the undisputed evidence offered by plaintiff herself, it was just as probable that the rat which bit or scratched her came into defendant’s theater from adjoining premises without negligence upon the part of defendant as that it came from inside the theater as a result of defendant’s negligence, if such there was. Under such circumstances, where there is not a scintilla of evidence to tag the rat as to its origin, a court or jury could not decide the instant case in favor of plaintiff except upon the basis of guess, speculation or conjecture. This the law does not permit and in the absence of any evidence either direct or inferential which would point to the rat as defendant’s rat rather than one coming from defendant’s neighbors, the Court of Common Pleas should have instructed a verdict in favor of defendant or should have granted defendant’s motion for a judgment notwithstanding the verdict.
 

 The judgment of the Court of Appeals is reversed and final judgment is entered for appellant.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Turner and Taft, JJ., concur.