WERLIN, INC. ET AL. *v.* BALTIMORE & OHIO RAILROAD, A.K.A. CHESSIE SYSTEMS, INC., APPELLEE, ET AL.; INTERNATIONAL HARVESTER COMPANY, APPELLANT.

(No. C-850828 — Decided January 7, 1987.)

*Lindhorst & Dreidame* and *James L. O'Connell,* for appellee.
*Edward J. Utz,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

Third party, defendant-appellant International Harvester Company appeals from the trial court's ruling in favor of defendant-appellee Baltimore & Ohio Railroad ("B&O") on B&O's product liability cross-claim against International Harvester, which arose out of a collision between a B&O train and a truck manufactured by International Harvester. We affirm.

The truck in question was a 1972 tractor-trailer unit owned by Werlin, Inc., purchased from International Harvester and leased to Irvin Roberts. The tractor was manufactured by International Harvester. At approximately 6:30 p.m. on December 8, 1975, an employee of Roberts was driving the tractor-trailer out of the property of River Transportation Company in Cincinnati, where it had been loaded with soybean oil. As the tractor-trailer was crossing a set of railroad tracks, the drive shaft of the tractor sheared off, causing the vehicle to become disabled on the tracks. The driver got out of the vehicle, discovered that a portion of the drive shaft was on the ground, and called his employer (Roberts) who in turn called a towing service. After fifteen to twenty-five minutes, a B&O train traveling at approximately forty-five miles per hour approached around a curve and collided with the tractor-trailer, causing damages to B&O in the stipulated amount of $184,371.11.

By the time of trial, the only unsettled claims were those asserted by B&O, as follows: (1) a product liability cross-claim against International Harvester; and (2) a property damage counterclaim against Werlin, the owner of the tractor-trailer; Lindsey Corporation, which had a contract to transport the soybean oil; and Roberts, the lessee of the tractor-trailer. These claims were tried to the court without a jury.

The evidence presented at trial established that, at the time of the collision, the fractured drive shaft had 280,000 miles on it. Dr. Peter Bertelson, the principal expert witness for B&O, testified that a drive shaft of this type is expected to last at least 500,000 miles. Bertelson expressed his opinion that the drive shaft in question failed because it was either undersized or improperly hardened. Michael L. Shirley, the principal expert witness for International Harvester, admitted that a properly designed, manufactured and maintained drive shaft of this type is intended to last as long as the tractor itself. Shirley gave his opinion that this drive shaft failed because it wore out, which in turn could have been caused in his opinion by impact loading situations, shock loading, inadvertent popping of the clutch, or lack of lubrication.

After hearing all of the evidence, the trial court entered its opinion in which it stated that:

"The court * * * finds by a preponderance of the evidence that the drive shaft was manufactured and sold by The International Harvester Co., Inc., and that at the time of sale and at the time of the accident the drive shaft was undersized and improperly hardened to carry the load it was carrying as a concurring proximate cause of the accident."[1]

The court further found that Irvin Roberts was negligent in failing properly to maintain and inspect the tractor and in failing to notify B&O of the presence of the truck on the tracks, and that B&O was contributorily negligent in failing to provide for an emergency notification procedure at the crossing. In conclusion, the court found that the accident was proximately caused by the negligence of Roberts forty percent, by International Harvester thirty-five percent, and by the contributory negligence of B&O twenty-five percent. Damages were apportioned in accordance with the specified percentages.

From the judgment entered thereon, International Harvester appeals, presenting two assignments of error.[2] In the first assignment, International Harvester asserts that the trial court's finding that the drive shaft was undersized and improperly hardened is contrary to the evidence and contrary to law, essentially challenging the sufficiency of the evidence to support this finding. For the reasons that follow, we find the assignment of error to be without merit.

International Harvester's argument is that the opinion of B&O's expert Bertelson that the drive shaft was either undersized or improperly

---

[1] Although the trial court states in this conclusion that the drive shaft was undersized "and" improperly hardened, in the findings of fact portion of its opinion, the court adopted the exact wording of Bertelson's opinion that the shaft was undersized "or" improperly hardened. We therefore assume that the latter phrasing was intended by the trial court, and we shall interpret the first assignment of error accordingly.

[2] International Harvester withdrew its third assignment of error, which asserted that comparative negligence is not applicable to a cause of action based upon strict liability. We need not decide this issue because it is no longer before us.

hardened amounts to speculation because it is not supported by evidence, and that therefore the cause of B&O's injury is just as reasonably attributed to the possible causes listed by International Harvester's expert Shirley. As support for its argument, International Harvester relies upon the rule in *Gedra* v. *Dallmer Co.* (1950), 153 Ohio St. 258, 41 O.O. 274, 91 N.E. 2d 256, which states as follows at paragraph three of the syllabus:

"[I]f the cause of an injury to a plaintiff may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of showing that his injury is a proximate result of the negligence of the defendant."

However, the Ohio Supreme Court has since held that the rule in *Gedra* does not impose upon a plaintiff the burden of always effectively eliminating all other possible causes in order to make his case, which would impose a burden of proof analogous to proof beyond a reasonable doubt. *Westinghouse Elec. Corp.* v. *Dolly Madison Leasing & Furniture Corp.* (1975), 42 Ohio St. 2d 122, 127, 71 O.O. 2d 85, 88, 326 N.E. 2d 651, 656. Instead, in a product liability case, the plaintiff need only prove by a preponderance of the evidence that the accident was caused by a defect and not other possibilities, and plaintiff need not eliminate all other possibilities. *Friedman* v. *General Motors Corp.* (1975), 43 Ohio St. 2d 209, 216-217, 72 O.O. 2d 119, 123, 331 N.E. 2d 702, 706-707.

In the present case, none of the expert witnesses was permitted to perform metallurgical tests upon the fractured drive shaft, apparently because such test would involve destruction of the shaft; they were limited to visual inspection of either the magnified photographs of the shaft or of the shaft itself. Nevertheless, B&O's expert Bertelson, an automotive engineer, was able to form an opinion as to the cause of the fracture, based upon his visual inspection, upon a drawing showing the specifications for this drive shaft that was admitted in evidence, and upon the fact that this shaft failed under normal service long before the expiration of its expected life. On this basis, Bertelson stated with certainty that the cause of the fracture was either a manufacturing defect, *viz.,* improper hardening, or a design defect, *viz.,* undersizing. Although he could not pinpoint the defect beyond those two alternatives, he specifically stated that "I'm sure of my conclusions that it was one or the other." His conclusions are absolute, not mere possibilities.

By contrast, Shirley, an International Harvester employee, could only give a list of possible causes, including impact loading situations, shock loading, inadvertent popping of the clutch, and lack of lubrication. However, there was evidence to support the conclusion that a properly designed and manufactured drive shaft of this type should have been able to withstand the heaviest loads. Furthermore, Shirley admitted on cross-examination that a vehicle such as this is expected to encounter shock loading in its commercial operations. There was also evidence that this vehicle was properly inspected and maintained.

For the above reasons, we conclude that there was competent, credible evidence to support the trial court's finding by a preponderance of the evidence that the failure of the drive shaft was specifically and actually caused by its being undersized or improperly hardened, and not by the possibilities suggested by International Harvester. These are specific manufacturing or design defects. See *Friedman, supra.* We therefore overrule the first assignment of error.

In its second assignment of error, International Harvester claims that the trial court erred by overruling its motion to dismiss pursuant to Civ. R. 41(B)(2). We disagree.

The test for reviewing a dismissal in a bench trial under Civ. R. 41(B)(2) is whether the trial court's ruling is erroneous as a matter of law or against the manifest weight of the evidence. *Janell, Inc.* v. *Woods* (1980), 70 Ohio App. 2d 216, 24 O.O. 3d 266, 435 N.E. 2d 1138. In order to recover on its product liability claim, B&O had the burden of proving that: (1) there was a defect in the drive shaft manufactured and sold by International Harvester; (2) the defect existed at the time the drive shaft left the hands of International Harvester; and (3) the defect was a direct and proximate cause of B&O's loss. See *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 65 O.O. 2d 374, 304 N.E. 2d 891.

We have already concluded that the trial court did not err in finding that the drive shaft was defective in that it was undersized or improperly hardened, which proximately caused the accident and B&O's resulting loss. Whichever was the defect, it necessarily existed at the time the drive shaft left International Harvester. We therefore determine that the trial court's ruling on the motion to dismiss was not erroneous as a matter of law. We further conclude that the ruling is not against the manifest weight of the evidence, because there was some competent, credible evidence going to all the essential elements of the case. See *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus. Accordingly, the second assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., and Keefe, J., concur.

BLACK, J., dissents.

BLACK, J., dissenting. I respectfully dissent. As I view the evidence, Baltimore & Ohio Railroad ("B&O") failed as a matter of law to prove the very first and most important element of its product liability claim against International Harvester Company. That element is the defect in International Harvester's product. If there is no defect in the manufacturer-seller's product at the time the product leaves its hands, there is no liability. The underlying concept is that a seller will be held liable when it markets a defective product that causes injury. Negligence is beside the point. The injured party is not burdened with proving either negligence or knowledge of the defect. He need only prove existence of "a defective condition unreasonably dangerous to the user or consumer or to his property," the injury and the connection between them. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, paragraph one of the syllabus; 2 Restatement of the Law 2d, Torts (1965) 347, Section 402 A. Therefore, in all fairness, it is absolutely essential that the defective, unreasonably dangerous condition be established by proving the defect or defects.

In the instant case, B&O's expert could not identify *the* defect. He testified that the drive shaft was either improperly hardened or undersized, but he could not state which of these alternatives was present. He did not make a metallurgical examination of the drive shaft, and he had no evidence that it was, in fact, improperly hardened. Equally, he could not state that the shaft was undersized for the particular truck.

This is insufficient. To allow a

claimant to establish his case by proving that the defect (or the source of the "defective condition") was either A or B, without specifying which one, will allow the claimant to recover whenever he can demonstrate that there were several possibilities. The majority in the instant case allows this to be done by proving alternative possibilities, but the principle underlying their decision is not limited to two. The principle will allow proof of any number of possible defects and will result in making the seller-manufacturer an insurer of his products. A claimant need only find one failed part and one seller (or manufacturer), establish possible defects, and thereby be entitled to recover. In my judgment, that result goes far beyond the contemplation of Section 402 A and is a totally impermissible extension of the doctrine of strict liability.

While the Restatement uses the phrase "defective condition unreasonably dangerous to the user or consumer or to his property," I believe that proof of the "defective condition" requires that the plaintiff prove the existence of a specific defect or defects. 2 Restatement of the Law 2d, Torts (1965) 351-352, Section 402 A, Comments *g* and *h*. To allow proof of several alternative defects without establishing the existence of any one will allow plaintiff to establish his claim with only proof of the injury, the several possibilities and the causal connection. I believe this illustrates, again, that the seller will be made an insurer of his merchandise.

It is also notable that B&O's case did not establish the unreasonable dangerousness of the drive shaft, a further failure of proof.

Ohio precedent does not lead to an affirmance of the judgment below. *Gedra* v. *Dallmer Co.* (1950), 153 Ohio St. 258, 41 O.O. 2d 274, 91 N.E. 2d 256, and *Westinghouse Elec. Corp.* v. *Dolly Madison Corp.* (1975), 42 Ohio St. 2d 122, 71 O.O. 2d 85, 326 N.E. 2d 651, were both negligence cases. They are not, in my opinion, controlling of the issues in this strict liability case, because the first element in those cases is negligence, not defect. *Friedman* v. *General Motors Corp.* (1975), 43 Ohio St. 2d 209, 72 O.O. 2d 119, 331 N.E. 2d 702, was a strict liability case, but there the defect could only have been one (whether the Oldsmobile Toronado engine could be started with the gear shift selector in the "drive" position); there was no alternative defect.

I would sustain both assignments of error because the trial court should not have found the defect had been proved and should have dismissed B&O's claim at the conclusion of the evidence, as a matter of law.