OTELE LAFAELE, Plaintiff

v.

CONTINENTAL INSURANCE CO.
and CHARLIE TAUTOLO, Defendants

High Court of American Samoa
Trial Division

CA No. 131-85

May 7, 1987

Before KRUSE, Associate Justice, LUALEMAGA, Associate Judge, and OLO, Associate Judge.

Counsel: For the Plaintiff, Albert Mailo
For the Defendants, Roy Hall

If the judicial fact finding process were a purely quantitative exercise, the effect of each party's evidence in this case would be simply to cancel the other party's evidence out. As it happens, our qualitative analysis of the evidence leads us to essentially the same conclusion.

Plaintiff testified that he was operating his vehicle in a non-negligent manner when defendant, who was approaching in his vehicle from the opposite direction, crossed the center line of the highway onto plaintiff's lane and side-swiped plaintiff's vehicle, causing sundry damage to person and property. Plaintiff had a close relative who was riding with him at the time who corroborated plaintiff's testimony to the detail.

Defendant's version was the laterally inverted image of plaintiff's case. Defendant had plaintiff crossing the center line. Like the plaintiff he produced a close relative who had been a passenger in his vehicle and who corroborated his story.

The only agreement between the parties was

that the collision occurred:  on a straight stretch of the  main east-west highway at or around Nu'uli; in the  early hours  of the  morning; in conditions described by defendant to be "perfect".

Hereafter  the  testimony  parted  in similar- ities.  Plaintiff  testified  that  after  the collision defendant  continued on without stopping, and so he gave  chase.  He finally  caught up with defendant  in  Utulei,  where  defendant had turned into  the  intersection  going  towards  the Administration Buildings.  After taking the license number of the other vehicle, plaintiff proceeded to the Police Station and filed a complaint.

On  the  other  side, defendant testified that when he saw plaintiff's  vehicle  cross  the center line he  attempted to  swerve to the curb.  He was, however,  limited  in his  actions  owing  to  a temporary embankment of excavation dirt built up on the  shoulder  of  his  side  of  the  road.  The embankment  was  said  to  be  due to Public Works' having been laying pipelines.  He  testified that after the  collision he was the one who stopped his vehicle and plaintiff was  the  one  who  drove on. Defendant then  walked around his vehicle and found that his side mirror on the  left was  damaged.  He assessed his  damage as  insufficient to prompt him to attempt to chase after the other vehicle at that hour  in  the  morning.  He continued eastward but made another stop off the road to take another look at his  vehicle.  When asked, he testified that at this time there was  no  one  else  in  sight.  He resolved  to  make  no  more  of  the  incident and continued onward to meet a friend.

Defendant testified further  that  on  his way home he  was surprised  when stopped  by an officer who  questioned  him  about  the  earlier incident. After giving  his version  of the  collision at the Police Station, he  heard  no  more of  the matter until plaintiff filed this suit.

The  initial  impression  gleaned  from  this testimony, given the hour of darkness  at which the collision occurred,  could well  be that one of the parties was honestly mistaken about the location of his  vehicle  in  relation  to the dividing line at that moment.  The extraordinary extent to which the two  stories  diverge,  however, makes it necessary for the Court to consider carefully the credibility of each.

In the Court's view, plaintiff's testimony was

in many instances both evasive and self serving.

When plaintiff was asked the location of defendant's vehicle at the time the chase was commenced, plaintiff readily ventured a definite location out of his sight and quite some distance away, apparently in the hope of assigning high speed to the defendant. Plaintiff's evidence would also have him undertaking the chase specifically at the posted speed limit. The testimony vascillated, however, between his initial estimate of 35 mph and a revised estimate of 25 mph, once the plaintiff was made aware that the actual posted speed limit was the latter.

When questioned about the presence of construction or excavation at the scene, plaintiff definitely denied such. It became clear to the court, however, that his responses were purposely limited to a denial that physical activity was taking place at the time the accident occurred, which was around one o'clock in the morning. He was not about to address, without some prodding, whether there was an embankment, although the Court finds it difficult to believe that he did not know that this was the question he had been asked.

Further, his testimony regarding the extent of property damage fell woefully short of being persuasive. He testified that he had received two repair damage estimates from separate mechanics. One was for $400 and the other for $500. Neither estimate was produced in court, but plaintiff stated that he opted for the $400 mechanic and allowed that repairs cost him $400.

The testimony later developed that the $400 mechanic was a friend of plaintiff's son who worked at a certain garage. That labor with repairs was without charge.

When questioned on the elements of the $400 estimate, however, given that no labor charge was involved, plaintiff responded that the $400 was expended on material that the mechanic had told him to purchase. Except for the paint, plaintiff was unable to name what the material comprised, attempting to feign ignorance about technical labels assigned to auto parts.

The authorities are replete with statements that the onus is on plaintiff to establish by evidence of preponderating weight that it was more probable than not that the injury complained of was

caused by defendant. So as not to appear to give ritualistic veneration to labels such as "preponderance of the evidence" and "balance of probabilities", we quote a leading treatise:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

Prosser & Keeton on Torts § 41 at 239 (5th. 1984) (citations omitted).

In our view, the evidence presented (by plaintiff on the one hand and by defendant on the other) in proof of causal connection is equally balanced, in that the facts are as consistent with one theory of causation as with the other. In other words, the facts in this matter lead to the conclusion that the cause of the injury "may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable". Gedra v. Dallmer Co., 91 N.E.2d 256, 260 (Ohio 1950). In order to sustain the plaintiff's claim on the evidence presented, the needed finding of proximate cause would rest solely on possibilities and conjecture. If we believed that plaintiff's credibility was superior to that of the defendant we might still conclude that he had proven his case. For the reasons stated, we do not so conclude. The only reasonable inference that can be drawn in the circumstances is that the proximate cause of plaintiff's damage is unknown and unproved.

In these circumstances the plaintiff, as a matter of law, must fail. Judgment will enter accordingly in favor of the defendants.