OPINION
This timely appeal arises from a judgment of the Mahoning County Court of Common Pleas in favor of the Defendants-Appellees Daniel McLaughlin ("McLaughlin") and John Petretich ("Petretich") in a negligence action. John Deagan ("Appellant") alleged that Appellees negligently rear-ended his automobile while he was stopped in traffic. For the following reasons, we reverse the judgment of the trial court.
On September 15, 1994, McLaughlin was driving along Route 224 in Poland, Ohio. (Tr. 187). McLaughlin's truck bumped into the car in front of him, which was driven by Petretich. (Tr. 188-89). Petretich was stopped at the time of the accident, as was the car in front of him which was driven by Appellant. (Tr. 166). Petretich testified that the impact with McLaughlin pushed his car into Appellant's automobile. (Tr. 165). Both Petretich and McLaughlin testified that the collision was light and caused only minor damage to their vehicles. (Tr. 166, 188-89).
The three men exchanged information at the accident scene and confirmed that no one was injured. (Tr. 170, 191). Four days after the accident, Appellant went to a physician claiming injury from the accident. (Tr. 53). Appellant testified that after the accident he began experiencing weakness in his hands. (Tr. 50). Appellant also complained of pain from his neck to his hands and pain in his lower back. (Tr. 50-51). Appellant, who is a dentist, testified that the loss of strength in his hands caused him to cut back his dental practice resulting in a loss of income. (Tr. 73).
Appellant was treated by a variety of health practitioners, including a physical therapist, a rheumatologist, a neurologist, a neurosurgeon, an orthopedic surgeon, an occupational therapist and a chiropractor. (Tr. 58-61, 71). Appellant stated that he suffered from arthritis in his hands prior to the accident. (Tr. 98). Appellant admitted that the arthritis caused him some stiffness and loss of strength prior to the accident. (Tr. 98- 99).
On September 11, 1996, Appellant filed a civil complaint against Appellees alleging negligence. On the same date, Appellant filed a civil complaint against his own insurance company, State Farm Mutual Automobile Insurance ("State Farm"), for uninsured/underinsured motorist ("UM/UIM") coverage. State Farm filed a motion to consolidate the two cases, which was granted on January 17, 1997.
On August 27, 1998, State Farm filed a motion to exclude evidence of Appellant's UM/UIM policy at trial. Appellant filed a motion in opposition on September 11, 1998. The trial court determined that the issue of UM/UIM coverage was irrelevant in determining Appellant's damages in the negligence action, and the court granted State Farm's motion on September 25, 1998.
A jury trial commenced on September 20, 1999, and continued until September 22, 1999, when the jury returned a verdict in favor of Appellees. This timely appeal followed.
Appellant presents three assignments of error for our review. His first assignment of error asserts:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ADMITTING INTO EVIDENCE UNAUTHENTICATED PHOTOGRAPHS."
Appellant argues that the trial court abused its discretion when it admitted photographs of Petretich's vehicle into evidence. The photographs in question were taken by an unknown person. Appellant contends that the photographs were not authenticated and lacked proper foundation. Appellant argues that Evid.R. 901(A) requires that all evidence, including photographic evidence, be properly authenticated prior to its admission. Evid.R. 901(A) states:
 "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
Appellant argues that a photograph cannot be admitted without testimony of the person who took the photograph or evidence of the reliability of the equipment which produced the photograph. Appellant cites MidlandSteel Prods. Co. v. U.A.W. Local 486 (1991), 61 Ohio St.3d 121, in support, which held that, "photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence." Id. at paragraph three of syllabus. Appellant's argument on this point is in error.
"The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Evid.R. 901 provides many examples of how evidence may be authenticated. The first, and by far the most common, acceptable method of authentication is through the testimony of witness with knowledge that the matter is exactly what it is claimed. Evid.R. 901(B)(1).
This Court has repeatedly held that photographs may be authenticated in many ways, as long as there is some evidence that the photograph is an accurate representation of what it portrays. State v. George (Nov. 11, 1988), Mahoning App. No. 87 CA 77, unreported; State v. McQueen (June 30, 1988), Mahoning App. No. 86 CA 102, unreported; see, also, State v.Hill (1967), 12 Ohio St.2d 88, 90. "Photographs need not be identified by the person who took them in order to be admissible in evidence as long as there is preliminary proof that the photographs are correct representations of the subjects which appear therein and are of such a nature as to throw light upon a disputed point." Gorcheff v. Rambo
(Apr. 11, 1985), Mahoning App. No. 83 CA 6, unreported.
Midland Steel is inapposite because in that case there was no independent corroboration that the events recorded on a videotape had actually occurred. Midland Steel at 130. The Court held that, in the absence of direct testimony about the events depicted in the video, authentication could be established by lay testimony regarding the reliability of the methods used to produce the video. Id. In the case at bar, we do not need to look for additional corroborating evidence. Petretich, who is undisputedly a person with knowledge of the subject matter, testified that the photographs accurately depicted what his vehicle looked like after the accident. (Tr. 168).
Appellant also argues that the photographs are inadmissible hearsay. This argument is likewise without merit. Under Evid.R. 801(C), "hearsay" is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The photographs in question are not statements or assertions, and they do not depict statements or assertions. Therefore, they cannot be inadmissible hearsay.
Appellant's first assignment of error is, thus, without merit.
Appellant's second assignment of error asserts:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY EXCLUDING EVIDENCE OF UNINSURED/UNDERINSURED MOTORIST INSURANCE COVERAGE IN THIS CASE."
Appellant argues that the trial court abused its discretion when it denied Appellant the ability to present evidence of his UM/UIM coverage. Appellant maintains that because the rules of evidence favor inclusion rather than exclusion of relevant evidence, he should have been allowed to mention his UM/UIM coverage.
Appellant also asserts that Civ.R. 17(A) requires that every civil action be maintained by the real parties in interest. Appellant argues that his insurance company was a defendant in the action and, therefore, the action should have been prosecuted in the name of the defendant. Appellant contends that information as to his insurance coverage was essential to the case. Appellant argues that, without being able to mention his insurance carrier, the jury did not even know who the involved parties were, making it impossible for the jury to reach a fair decision.
Appellee responds that Appellant failed to proffer evidence of insurance coverage at trial as required by Evid.R. 103(A)(2), and that he has waived this issue on appeal. In addition, Appellee argues that there is no connection between Appellee's liability for negligence and Appellant's insurance coverage. Finally, Appellee asserts that Appellant has not shown how his substantial rights were prejudiced by the exclusion of evidence regarding his own UM/UIM coverage. We agree with Appellee's arguments, here.
As previously noted, the admission or exclusion of evidence is within the sound discretion of the trial court. Peters, supra,63 Ohio St.3d at 299.
Evid.R. 103(A) states, in pertinent part:
 "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
"* * *
"(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination."
State Farm requested the exclusion of evidence of Appellant's UM/UIM policy in a motion in limine filed on August 27, 1998. An appellate court does not directly review the rulings on motions in limine. White v.Center Mfg. Co. (1998), 126 Ohio App.3d 715, 723. A pretrial ruling on such a motion is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. State v.Grubb (1986), 28 Ohio St.3d 199, 201-202; McCabe/Marra Co. v. Dover
(1995), 100 Ohio App.3d 139, 160. A court's initial denial of a motionin limine does not preserve any error for review. State v. Hill (1996),75 Ohio St.3d 195, 202-203. Thus, the evidence at issue must be presented at trial, and a proper proffer made, in order to preserve the error for appeal. Grubb, supra, at 201. By failing to raise at trial the issues advanced in the motion in limine, the objecting party waives the right to raise those issues on appeal. Id.
Because he failed to raise the insurance issue at an appropriate time during trial, Appellant failed to preserve error, if any, for our review.
Furthermore, assuming arguendo that Appellant had properly preserved this issue for review, the trial court was justified in excluding the evidence of Appellant's own insurance policy pursuant to Evid.R. 411, which states:
 "Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness."
The introduction into evidence of Appellant's UM/UIM policy could be viewed as an attempt to prove that Appellees did not have liability insurance, or at least did not have sufficient liability insurance to cover all of Appellant's damages. Evid.R. 411 prohibits both the introduction of evidence that a party has liability insurance and evidence that a party does not have liability insurance, as it relates to a defendant's negligence.
It is also unclear how Appellant's UM/UIM policy was relevant to the disputed issues in this case, namely, proximate causation and damages. Evid.R. 401 defines relevant evidence as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." UM/UIM coverage only arises after it is determined that a defendant is liable for damages and after there is a determination that the defendant either did not have liability insurance or that his insurance was inadequate to cover the insured's damages. See R.C. § 3937.18(A). The existence of UM/UIM coverage does not increase or decrease the likelihood that Appellees caused Appellant's injuries. Nor does it help determine the extent of Appellant's damages.
The only other reason that Appellant has proposed for introducing evidence of Appellant's UM/UIM coverage is to accurately identify the parties in this case. The trial court's September 25, 1998, Judgment Entry does not prohibit the mentioning of State Farm as a party. The judgment entry only precludes evidence of insurance coverage.
The ultimate effect of prematurely introducing evidence of UM/UIM coverage would be to encourage the jury to, "`be reckless in awarding damages' as they will be paid `not by the defendant, but by a supposedly well-pursed and heartless insurance company that has already been paid for taking the risk.'" Tucker v. McQuery (1999), 107 Ohio Misc.2d 38,41, quoting 2 Wigmore, Evidence (Chadbourn Rev. 1979) 148, Section 282a. Evid.R. 403(A) gives a trial court the discretion to exclude otherwise relevant evidence, "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Even if Appellant's UM/UIM coverage were relevant, the trial court would have been well within its discretion to exclude the evidence as unfairly prejudicial or confusing to the jury.
Appellant's second assignment of error is without merit.
Appellant's third assignment of error asserts:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GIVING AN ERRONEOUS JURY INSTRUCTION REGARDING CAUSATION."
Appellant argues that the following section of the jury instructions should not have been given:
 "It is not enough for the plaintiff to prove merely that the defendant's negligence might have caused his injuries. If his injuries might well have resulted from any one of several causes, the plaintiff must produce evidence which will exclude the effectiveness of those causes for which the defendant is not legally responsible."
(Tr. p. 257). Appellant argues that this jury instruction should only be given when there are several reasonable explanations of an event and when a plaintiff can prove his case only by disproving all but one explanation. See Gedra v. Dallmer Co. (1950), 153 Ohio St. 258, paragraph two of syllabus, which held:
 "In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible."
Appellant contends that, in the case at bar, the automobile accident is the only reasonable explanation of Appellant's injuries, and the Gedra
instruction confused and misled the jury as to Appellant's burden of proof. The record reveals that Appellant timely objected to the jury instruction, and therefore properly preserved this issue for review. (Tr. 212).
Appellant also maintains that the jury instructions should have included the "eggshell skull" rule. See Pace v. Ohio DOT (1991),62 Ohio Misc.2d 184, 186. Appellant asserts that the following jury instruction should have been given to the jury:
 "A defendant who negligently inflicts injury on another takes the injured party as she finds her and is liable for the actual injury and damages suffered directly from the Defendant's negligence. If you find that the Plaintiff in this case had a pre-existing disposition which made her more susceptible to injury, nevertheless, a negligent wrongdoer is liable for the actual injury and actual lack of recovery, if any, which the Plaintiff sustained as a result of the Defendant's negligence."
This aspect of Appellant's argument is without merit, because the court gave the instruction Appellant requested. (Tr. 252).
Appellee asserts that the jury instructions reiterated that Appellant had the burden of proving both proximate cause and cause in fact. Appellee contends that Appellant had to prove his injuries were the foreseeable result of Appellee's negligence and that his injuries were the actual result of Appellee's conduct. Appellee argues that the evidence presented at trial indicated that Appellant suffered from several preexisting, progressively worsening conditions. Appellee contends that it was the function of the jury to determine whether Appellant's injuries were caused by the automobile accident or by his preexisting conditions.
The purpose of the jury charge is, "to state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired." Cleveland Elec. Illuminating Co. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 272. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. Lake County Memorial Hosp. West
(1990), 53 Ohio St.3d 202, 208. The decision to include or exclude a particular instruction generally lies within the sound discretion of the trial court. Cabe v. Lunich (1994), 70 Ohio St.3d 598, 602.
If the jury instructions incorrectly state the law, then a de novo
review is undertaken to determine whether the incorrect jury instructions probably misled the jury in a matter materially affecting the complaining party's substantial rights. Kokitka v. Ford Motor Co. (1995),73 Ohio St.3d 89; State v. Lessin (1993), 67 Ohio St.3d 487, 494.
A review of the jury instructions in their entirety demonstrates that the instructions incorrectly stated the law as to the elements that Appellant was required to prove in order to prevail. Although the trial court gave extensive instructions as to negligence and proximate cause, the additional Gedra instruction prevented the jury from finding in Appellant's favor unless the jury determined that every other possible cause of his injuries was disproven. In essence, this forces a plaintiff to prove a negative. In contrast, a typical plaintiff suing in a negligence action must only prove that the defendant owed him a duty of care, that the defendant breached the duty, and that his injuries were proximately caused by the defendant's conduct. Hanson v. Kynast (1986),24 Ohio St.3d 171, 177.
Gedra instructions are only appropriate when the evidence is, "so inconclusive that no inference could reasonably be drawn which would support plaintiff's claim." Westinghouse Elec. Corp. v. Dolly MadisonLeasing Furniture Corp. (1975), 42 Ohio St.2d 122, 126. In Gedra, the plaintiff was seated in the defendant's theater when she was attacked by a rat. The record revealed that the rats could have entered the theater from other nearby restaurants which may have been the breeding grounds for the rats. "Under such circumstances, where there is not a scintilla of evidence to tag the rat as to its origin, a court or jury could not decide the instant case in favor of plaintiff except upon the basis of guess, speculation or conjecture." Gedra, supra, 153 Ohio St. at 267.
Gedra does not impose upon a plaintiff the burden of always effectively eliminating all other possible causes in order to make his case.Westinghouse Elec. Corp., supra, 42 Ohio St.2d at 127. If a Gedra
instruction were required in every civil case, it would impose a burden of proof analogous to proof beyond a reasonable doubt in criminal cases.Id.
Gedra instructions should be reserved for those cases in which the plaintiff has not presented any credible evidence that the alleged cause of the injury was the probable cause. It is only where the plaintiff's evidence of negligence is either incomplete or so inconclusive that no inference could reasonably be drawn as to whose conduct negligently caused the injury, that the plaintiff also has the burden of eliminating all other possible causes in order to establish the defendant's negligence. Id.
A Gedra instruction should not be given in cases where expert testimony establishes to a reasonable degree of certainty that the defendant probably, rather than merely possibly, caused the plaintiff's injuries.Loura v. Adler (1995), 105 Ohio App.3d 634, 638; Kurzner v. Sanders
(1993), 89 Ohio App.3d 674, 683; Werlin, Inc. v. Baltimore Ohio R.R. (1987), 32 Ohio App.3d 14, 16; Axmacher v. Oches (June 29, 1992), Butler App. No. CA91-04-073, unreported; cf., Young v. Miller Bros. ExcavatingInc. (July 26, 1989), Montgomery App. No. 11306, 11307, unreported (in which a Gedra instruction was appropriate when plaintiff's expert testified only to the possibility of proximate causation).
While evidence pointed to several other contributing factors, Appellant's expert evidence clearly indicated that the automobile accident was the probable cause of Appellant's injuries. (Tr., Pl. Exh. 2, notes of Dr. Jeffrey S. Morris). This expert medical evidence alone is sufficient to overcome the need for a Gedra instruction. Thus, there was no need for Appellant to prove the negative, that is, that no other factor contributed to his injuries. Rather, once this expert opinion gives the accident as the probable cause of injury, it was up to Appellee to disprove this by introducing evidence and other expert testimony tending to disprove Appellant's expert testimony. In the matter before us, there were no other issues for the jury to decide other than proximate cause and damages. We can easily presume, then, that Appellant was prejudiced by the faulty instruction.
For the foregoing reasons, we are persuaded by Appellant's third assignment of error that the trial court committed prejudicial error by giving a Gedra instruction to the jury. Appellant's two remaining assignments of error are without merit. We reverse the September 23, 1999, Judgment Entry, and remand this case for further proceedings consistent with this opinion.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.