{¶ 32} I respectfully dissent from the majority's viewpoint regarding the issue of constructive notice. Because I believe that appellant failed to adduce sufficient proof of appellee's negligence, I would affirm the trial court's directed verdict. To have allowed this case to go forward would have invited, and indeed would have required, a jury verdict based upon speculation.
 {¶ 33} In 1950, the Supreme Court of Ohio set forth several principles regarding causation in negligence cases, which principles remain binding upon this court today, and are particularly useful in analyzing the issues in this case. InGedra v. Dallmer Co. (1950), 153 Ohio St. 258, 91 N.E.2d 256, the court held:
In a negligence action, it is not sufficient for plaintiff to prove that the negligence of defendant might have caused an injury to plaintiff but, if the injury complained of might well have resulted from any one of several causes, it is incumbent upon plaintiff to produce evidence which will exclude the effectiveness of those causes for which defendant is not legally responsible.
In such an action, if the cause of an injury to a plaintiffmay be as reasonably attributed to an act for which defendant isnot liable as to one for which he is liable, the plaintiff hasnot sustained the burden of showing that his injury is aproximate result of the negligence of the defendant.
Id. at paragraphs two and three of the syllabus. (Emphasis added.)
 {¶ 34} In Westinghouse Electric Corp. v. Dolly MadisonLeasing Furniture Co. (1975), 42 Ohio St.2d 122,326 N.E.2d 651, the court explained that, "[t]he logic of [Gedra and its progeny] is that a jury verdict may not be based upon mere speculation or conjecture." Id. at 126. The court inWestinghouse went on to explain:
Where there is a failure to warrant an inference of negligence, the rule in Gedra applies. That rule merely states the logical principle that where several reasonable explanations of an event are possible, the disproof of all but one necessarily acts as the proof of that one, and there are cases where this method of proof is the only way in which plaintiff can make his case. The rule does not intrude on the jury's role as the finder of facts, nor does it impose on a plaintiff the burden of always effectively eliminating all other possible causes in order to make his case, which would impose a burden of proof analogous to the burden in criminal cases of proof beyond a reasonable doubt. Rather, the rule holds that where the facts from which an inference ofprobable proximate cause must be drawn are such that it is asreasonable to infer other causes, plaintiff has failed to supplyproof of probable cause. Where plaintiff has only presentedproof that the actual cause was one of a number of possibilities,to enable an inference to be drawn that any particular cause isprobable, the other causes must be eliminated.
Id. at 127. (Emphasis added.)
 {¶ 35} Consistent with the express requirement that the trier of fact in a negligence case be presented with proof sufficient to link the defendant's breach with the actual cause of the plaintiff's injury, the Supreme Court of Ohio, in Johnson v.Wagner Provision Co. (1943), 141 Ohio St. 584, 589,49 N.E.2d 925, established the following requirements with respect to proof in cases involving slips and falls on foreign substances:
To be entitled to recover in cases of [a slip and fall on a foreign substance], it is necessary for a plaintiff to show:
1. That the defendant through its officers or employees was responsible for the hazard complained of; or
2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
3. That such danger had existed for a sufficient length oftime reasonably to justify the inference that the failure to warnagainst it or remove it was attributable to a want of ordinarycare.
(Emphasis added.) See, also, Anaple v. The Standard Oil Co.
(1955), 162 Ohio St. 537, 124 N.E.2d 128, paragraph one of the syllabus; Presley v. Norwood (1973), 36 Ohio St.2d 29, 31,303 N.E.2d 81.
 {¶ 36} This court has consistently adhered to the principle that a plaintiff in a slip-and-fall case involving a foreign substance bears the burden of proof that the hazard existed for a length of time sufficient to reasonably put the premises owner on notice of the hazard in time to warn the plaintiff of it or to remove it.[2] This court most recently adhered to this principle in the case of Dodson v. The Ohio State Univ. Med.Ctr., Franklin App. No. 03AP-54, 2003-Ohio-4410.
 {¶ 37} In Dodson, the plaintiff was injured when she slipped on coffee spilled in the hallway of a hospital building while visiting a patient. After a bench trial, the trial court rendered a defense verdict, and specifically found that the plaintiff had failed to prove, by a preponderance of the evidence, that the coffee spill had been on the floor for a length of time sufficient to justify the inference of negligence on the part of the hospital. The plaintiff appealed, asserting the judgment was against the manifest weight of the evidence.
 {¶ 38} In Dodson, the plaintiff submitted more circumstantial evidence of the length of time the coffee had been on the floor than appellant herein has presented with respect to the oozing substance upon which he fell. The plaintiff inDodson also introduced evidence of the frequency and character of inspections of the hallways conducted by hospital personnel. On appeal, the plaintiff argued that the trial court erred in not giving more weight to this evidence.
 {¶ 39} In affirming the trial court's judgment, a unanimous panel of this court discussed the importance of length-of-time evidence in establishing negligence in slip-and-fall cases involving foreign substances, and the relatively subordinate role played by inspection-related evidence, particularly with respect to proof of causation:
Because the case at hand is a slip-and-fall case and plaintiff was on defendant's premises as a business invitee, this case falls within the ambit of Wagner Provision Co. In this case, no evidence was presented at trial that would indicate OSUMC either created the hazard or had actual knowledge of the hazard. Accordingly, the core issue at trial was whether the coffee wason the floor for a sufficient length of time to justify theinference that the failure to warn against the hazard or removeit was attributable to any want of ordinary care. Essentially, this requires plaintiff to prove that OSUMC breached its duty to her.
The frequency of rounds formally performed by OSUMC securityis not directly relevant to whether OSUMC was on constructivenotice of the hazard. Whether or not this practice is reasonableis not relevant to whether the hazard existed for a sufficientperiod of time to impute constructive knowledge to OSUMC. * * * Performing formal rounds every four hours may not be reasonable, but that finding, in itself, would not necessarily impute constructive knowledge of a hazard that may have existed for ten to fifteen minutes.
Id. at ¶¶ 8-9. (Emphasis added.) In other words, there must be sufficient evidence from which the trier of fact may reasonably find a causal link between any unreasonableness of the premises owner respecting the inspection process, and the existence of the hazard that injured the plaintiff. As noted in Dodson, the core issue in determining whether this causal link exists is the length of time that the hazard existed prior to the plaintiff's encounter with it.
 {¶ 40} Contrary to the rationale in Dodson and the well-established line of cases to which it belongs, the majority holds that evidence establishing that an inspection was not conducted within a particular period of time prior to an accident may warrant an inference that the hazardous condition existed long enough such that a person exercising reasonable care would have discovered it. Put another way, the majority holds that a premises owner's unreasonableness in discharging its duty to inspect may serve as circumstantial evidence that a dangerous condition existed for an unreasonable period of time.
 {¶ 41} This holding essentially requires the "unreasonable" premises owner to prove that its unreasonableness is not the actual cause of the plaintiff's injury; congruently; it relieves plaintiffs of the customary burden of proving that the premises owner's unreasonableness is in fact the cause of the injury, as opposed to one of several possible causes. In my view, this departs from traditional tort concepts of burdens of proof, and the justifications for, and limits upon, the imposition of liability for negligence. It also presents a serious risk of speculative verdicts, which may pronounce truths bearing little or no resemblance to the events that actually transpired. At its essence, the majority's holding allows imposition of liability without proof of causation.
 {¶ 42} Moreover, to impose what is essentially strict liability upon an unreasonable premises owner for all injuries that occur on the premises, whether or not they are proven to be causally related to the owner's failure to reasonably inspect, is to make business owners insurers of a customer's safety. The Supreme Court of Ohio has held that a business owner is not an insurer of customers' safety. Paschal v. Rite Aid Pharmacy,
Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474. But this is precisely the effect of the majority's decision today. It imposes strict liability on the mere contention that the premises owner "should have known" of the dangerous condition.
 {¶ 43} For support of its holding, the majority relies upon the cases of State Farm Mut. Automobile Ins. Co. v. Chatham Dev.Corp. (June 6, 1995), Franklin App. No. 94APE08-1243, Tarkanyv. Bd. of Trustees of Ohio State Univ. (June 4, 1991), Franklin App. No. 90AP-1398, and Collins v. Emro Marketing Co. (May 11, 1999), Franklin App. No. 98AP-1014. Its reliance on these cases is based primarily on the fact that those cases did not discuss length-of-time evidence. However, facts rendering each of those cases distinguishable from the present case obviated the need for such discussions.
 {¶ 44} State Farm involved property damage not occasioned by a foreign substance, whose presence on any business premises is typically short-lived and unexpected. Rather, the damage was caused by an underground septic tank whose existence on the premises was of a permanent, structural nature. Further, the tank's presence was indicated in construction drawings, a historical survey and a storm sewer survey in the possession of the premises owner. Thus, the owner in State Farm had actualknowledge of the permanent defect.
 {¶ 45} In Tarkany, the court affirmed the judgment in favor of the premises owner because the evidence revealed that the latent defect in question could not have been discovered by a reasonable inspection. Because even a reasonable inspection would not have conferred actual knowledge upon the premises owner nomatter how much time had passed since the latent defectmanifested itself, it was unnecessary for the court to engage in a discussion of length-of-time evidence. This does not mean that length-of-time evidence is never required in premises liability cases.
 {¶ 46} Finally, in Collins, this court applied a narrow exception to the general requirement that a plaintiff prove actual or constructive notice of the latent defect. The exception derives from the notion that if a specific, unsafe condition is foreseeably inherent in the nature of the business or mode of operation thereof — that is, it is an ongoing and intrinsic risk — then the plaintiff can establish liability by showing that the operator of the premises failed to conduct periodic inspections with the frequency required by the foreseeability of the risk. It is the very nature of the use to which the premises is put that confers notice upon the owner that the defect is likely to exist.[3] I find the analysis in Collins to be inapplicable to the present case. The record herein contains no evidence that the defect involved in appellant's injury was foreseeably inherent in the nature of the operation of an apartment complex.
 {¶ 47} If one assumes, for the sake of argument, that a daily walk over the grassy area where appellant fell would be considered a reasonable inspection procedure, then the holding of the majority would allow the imposition of liability upon appellee for not conducting such a daily walk even if, in actuality, the substance upon which appellant fell had been deposited by an unknown third party a mere two hours, or twenty minutes, or even two minutes prior to the moment appellant began his journey across the area. This result would impose liability where a "reasonable inspection" would not have revealed the existence of the hazard in time to save appellant from injury by removing or warning of it. It would allow a finding of negligence where no causation had been established.
 {¶ 48} In ruling upon appellee's motion for a directed verdict, the trial court was required to determine if appellant had presented evidence as to whether the foreign substance involved in this case was capable of being revealed by a reasonable inspection. This is a crucial question that must be answered by the evidence (or by inferences that can be reasonably drawn therefrom) whenever the duty to inspect is applied to find constructive notice of a hazard. See, e.g., Shetina v. OhioUniv. (1983), 9 Ohio App.3d 240, 459 N.E.2d 587, Nice v.Meridia Hillcrest Hosp. (Aug. 2, 2001), Cuyahoga App. No. 79384.
 {¶ 49} "[A] [d]efendant has a duty to undertake reasonable inspections, not to inspect everything that might conceivably cause injury. What is reasonable under the circumstances of a given case is ordinarily a question for the trier of fact."Tarkany, supra, 1991 Ohio App. LEXIS 2648, at *5-6, citingGibbs v. Village of Girard (1913), 88 Ohio St. 34,102 N.E. 299, paragraph four of the syllabus. In other words, liability will be imposed upon an owner who fails to make reasonable inspections only if such inspections would have revealed the defect. As this court held in Shetina, a "defendant should be charged with constructive knowledge of the latent defect * * * [only when] actual knowledge would have been acquired ifreasonable inspection had been made." Shetina, supra, at 241. (Emphasis added.)
 {¶ 50} In my view, appellant failed to present evidence that could have been utilized by the jury in deciding whether the oozing substance would have been revealed by a reasonable inspection, regardless of the duration of its presence on the grassy area where appellant fell. Appellant testified that he did not notice the substance until after he fell, when he saw it clinging to his clothing, and the weight of his body caused it to seep up from the ground. Appellant's daughter and appellee's leasing agent were walking alongside appellant. Appellant's daughter testified that she did not see the substance or otherwise know it was there in advance of appellant's fall. There was no evidence presented to show whether the substance had been deposited on the surface of the grass and had migrated into the ground, or was already present underground and had seeped up to the surface at some point in time.
 {¶ 51} This evidence is insufficient to demonstrate the existence of a genuine issue of fact as to whether the defect would have been revealed by a reasonable inspection of the premises. Thus, constructive knowledge should not be imputed to the defendant. Regardless of evidence of any actual inspection policy or compliance or non-compliance therewith, the evidence must support the inference that any reasonable inspection would have revealed the existence of the latent defect. See Shetina,
supra. In a case such as the one at bar, where there is no evidence that the premises owner created the hazard, and no evidence that the owner had actual knowledge thereof, whether even the most keen inspection procedures would have revealed the existence of the hazard in time to save the customer from his injuries is crucial to proving constructive notice. This requirement cannot be ignored, even where the evidence suggests the owner acted unreasonably.
 {¶ 52} Even if the evidence supports the conclusion that the substance was capable of being detected by a reasonable inspection, the fact remains that appellant presented no direct or circumstantial evidence showing how long the substance had been present on the premises. I am not persuaded that a jury could decide whether appellee's "unreasonableness" in discharging its duty to inspect is causally linked to appellant's injuries, without relying on speculation or imposing strict liability.
 {¶ 53} "The court * * * may direct * * * a verdict for the defendant if * * * the evidence fails to show * * * anything from which * * * negligence can reasonably be inferred; or if the evidence on the issue of negligence is merely speculative * * *." 70 Ohio Jurisprudence 3d 427-428, Negligence, Section 222. In this case, appellant failed to carry his burden of proof with respect to causation because he presented no evidence — direct or circumstantial — that warrants an inference that the hazard that caused his injuries existed on the premises for a length of time such that the failure to remove it or warn of it is attributable to a want of ordinary care on the part of appellee.
 {¶ 54} Accordingly, for all of the foregoing reasons, I respectfully dissent from the majority's discussion of constructive notice in paragraphs 18 through 30. I would affirm the trial court's grant of a directed verdict in favor of appellee, and the judgment entered thereon. Because the majority concludes that reversal and a new trial are appropriate, I respectfully dissent.
[2] See, e.g., Barker v. Wal-Mart Stores, Inc. (Dec. 31, 2001), Franklin App. No. 01AP-658; Cooper v. Red Roof Inns,Inc. (Mar. 30, 2001), Franklin App. No. 00AP-876; Wilson v. TheKroger Co. (Dec. 21, 1999), Franklin App. No. 99AP-469;Dickerson v. Food World (Dec. 17, 1998), Franklin App. No. 98AP-287; Gilbert v. The Kroger Co. (Dec. 19, 1996), Franklin App. No. 96APE03-374; and Mackin v. Wendy's International, Inc.
(Mar. 2, 1989), Franklin App. No. 88AP-1031. See, also, Sweet v.Big Bear Stores Co. (1952), 158 Ohio St. 256.
[3] In Collins, the court's conclusion that the gas station owner had constructive notice of the oil spill, notwithstanding the lack of length-of-time evidence, was based upon the fact that station managers testified that they knew that customers' cars leaked oil onto the premises, and they knew that oil was frequently spilled on the premises by customers adding oil to their vehicles. One manager testified that he considered oil spills to be potentially dangerous conditions when they were in the areas frequented by customers, because of the danger of a customer slipping and falling, and also due to environmental dangers posed by the spills. "However, even with this knowledge of the propensity of the oil to be spilled on the lot and knowledge of the dangers of such spills, [management] testified that there was no regular inspection program for checking the lot for spilled or leaked oil." Collins, 1999 Ohio App. LEXIS 2185, at *17.