JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Jacquelyne Dykstra ("employee") appeals the trial court's granting of summary judgment to defendant R.S. Industries, Inc. ("supplier"). The employee was the cake decorator at a Giant Eagle Supermarket in Solon, Ohio, where she had worked for over twenty-five years. She was seriously burned when she stepped into a pit of scalding water in the bakery.
 {¶ 2} On the morning of her injury, the employee was looking for buckets to use for dividing the large batch of frosting her fellow employees had prepared. In search of these buckets, she went into an area of the bakery that she usually did not frequent. In this area was a large "pan washer," essentially an oversized dishwasher which accommodated large racks of baking pans. This pan washer had a large rectangular-shaped pit which was underneath the pan washer and extended several feet behind the pan washer. The pit contained a filter for catching the food particles from the pan washer to prevent them from clogging the machine. To clean this filter, the open pit had a metal lid which had to be lifted to access the filter area.
 {¶ 3} This pit also had a flotation device which controlled the heating element for the water in the pan washer. If the water level dropped too low, the flotation device would turn off the heater. The supermarket had experienced an ongoing problem with the heater not working. The supplier made six service calls to the supermarket within the previous fifteen-month period; three were in response to a heater problem. The last service call prior to the accident which is the subject of this suit was twenty-seven days before the accident.
 {¶ 4} Although the employees apparently did not inform the supplier of the fact, they had observed that the water would not heat up when the flotation device was stuck. They restarted the heater by jiggling the flotation device. Because they frequently had to jiggle the flotation device to restore the hot water, the employees had developed the habit of leaving open the lid which covered the pit. The employee who was injured, however, was not involved in the jiggling of the flotation device and was not aware of the practice of leaving the pit uncovered. On the day of her injury, she apparently slipped or stepped into the pit and suffered second and third degree burns on her left leg up to her hip. Her burns required frequent, painful debriding as well as multiple skin grafts. No one disputes the seriousness of her injuries.
 {¶ 5} The employee filed suit against the supermarket, the manufacturer of the pan washer, and the supplier, the sole appellee in this case. All defendants filed motions for summary judgment. The supermarket and the manufacturer settled with the employee after the court denied their motions for summary judgment. The court granted summary judgment to the supplier, which decision the employee now appeals, stating one assignment of error:
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT R.S. INDUSTRIES, WHEN THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD DIFFER ON THE ISSUES OF WHETHER R.S. INDUSTRIES WAS NEGLIGENT AND WHETHER ITS NEGLIGENCE WAS A PROXIMATE CAUSE OF PLAINTIFF'S INJURY."
 {¶ 6} The employee presents two negligence theories to support her claim that the supplier is liable. Employee argues the supplier breached a two-fold duty to her, which breach caused her injuries. To prevail on a negligence claim, a plaintiff must prove three elements: (1) a legal duty on the part of the defendant; (2) defendant's breach of that legal duty; (3) and an injury which proximately resulted from that breach. Texler v.D.O. Summers Cleaners (1998), 81 Ohio St.3d 677, 680.
 {¶ 7} In order to satisfy the first element, a supplier's duty, the employee must satisfy R.C. 2307.71(O)(1)(b),[1] which defines the term "supplier" as follows:
"(O)(1) "Supplier" means, subject to division (A)(15)(b) of this section, either of the following:
* * *
(b) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product thatallegedly causes harm. (Emphasis added.)"
 {¶ 8} In the case at bar, the parties agree that the supplier fits the statutory definition because it performed the maintenance and repair of the pan washer.
 {¶ 9} Someone who is hired to maintain or repair equipment has a duty to do so in a workmanlike manner and to exercise reasonable care to prevent injury to persons who could foreseeably be injured by negligent maintenance or repair. Bohme v. Sprint Int'l (1996), 115 Ohio App.3d 723,730. According to the employee, the supplier breached its duty of care in one of two ways: the supplier did not properly repair the washer's faulty flotation device and the supplier failed to install a guardrail.
 {¶ 10} The supplier's inadequate repair, employee contends, unpredictably allowed the washer's water temperature to rise to 150 to 170 degrees, which increase directly caused her injuries when her leg was immersed in the filter pit area. There is no evidence, however, that the water temperature was any different when employee was injured. Though the employee testified that someone told her the water "was 170 degrees or so,"[2] we do not find her testimony conclusive evidence about the water temperature. The testimony is merely speculative and arguably inadmissible as hearsay.
 {¶ 11} Jeffrey Zimmerman, moreover, one of the supplier's employees, testified that when the machine is operating normally the water temperature should be at 150 degrees. Because there is no evidence that the water temperature was cooler on days other than when the employee was injured, we conclude that the employee has failed to rebut the supplier's evidence that the machine was functioning on the day of her accident in the manner intended by the manufacturer. Accordingly, we do not find that the supplier negligently failed to repair any deficiencies relevant to her injuries. Under these facts, the supplier did not breach any duty to repair owed to the employee.
 {¶ 12} Next, the employee argues that the supplier had a duty to install a guardrail around the washer's pit area. The employee argues the absence of a guardrail at the Solon store made the washer unreasonably dangerous and the proximate cause of her stepping into the washer pit. In support of this argument, the employee points to the Giant Eagle store in Twinsburg, Ohio, which had a washer that was similar to the one in Solon and which the supplier also serviced. According to the employee, because the Twinsburg machine had a guardrail installed[3] around it, the supplier should have installed the same kind of rail around the washer in Solon. We disagree.
 {¶ 13} First, there is no evidence that the supplier even installed the guardrail at the Twinsburg Giant Eagle. One may infer only that the rail was added, because Zimmerman stated that the machines do not come with guardrails. According to Zimmerman, including a guardrail makes it more difficult to get at and clean the filter.
 {¶ 14} Second, in his appellate brief the employee concedes that the washer in Twinsburg was different from the machine in Solon. The Twinsburg washer had an area of the pit opening that could not be covered. There is no evidence that the Solon machine, however, had any part of its pit area openly exposed all the time. To the contrary, the employee concedes that the washer in Solon had a metal lid which was supposed to be closed when the machine was not being serviced or cleaned. With the pit areas of each machine either being installed or designed differently, nothing can be decided about the Solon machine on the basis of the machine in Twinsburg. See, Matthews v. Keller Indus.,
Jefferson App. No. 93-J-20, 1994 Ohio App. LEXIS 4854, at *7, (To satisfy the "substantially similar" requirement, the trial court required that the ladder used in the demonstration be virtually identical to the ladder in question).
 {¶ 15} Moreover, even if this court were to assume that a guardrail would have made the Solon machine safer, we still would not find that the supplier owed employee a duty to install a rail. This claim, namely, that the machine was defective without a guardrail, is actually a design defect claim which is more properly brought against the manufacturer of a machine, not a supplier.[4] Accordingly, we reject the notion that the supplier in this case had a duty to install a guardrail around the Solon washer.
 {¶ 16} Even if this court assumes that the supplier had a duty, the employee's case still fails. "Once the existence of a duty is found, a plaintiff must show that the defendant breached its duty of care and that the breach proximately caused the plaintiff's injury." Simmers v. BentleyConstr. Co. (1992), 64 Ohio St.3d 642, 646.
 {¶ 17} In the case at bar, employee has failed to exclude as a proximate cause, however, the failure to close the lid. It is well settled that, whenever there is more than one possible cause for an injury,
"[t]here must be some evidence, direct or inferential, that the agency which produces an injury is the result of the negligence of a defendant before he can be held liable therefor, and if the cause of an injury to a plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of proving that his injury is the direct result of the defendant's negligence . . . [It] is not enough for the plaintiff to prove that the negligence might perhaps have caused the injury. If, for example, the injury complained of might well have resulted from any one of many causes, it is incumbent upon the plaintiff to produce evidence which will exclude the operation of those causes for which defendant is under no legal obligation. If the cause of the injury to the plaintiff may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has not sustained the burden of fastening tortious conduct upon the defendant."
 {¶ 18} Gedra v. Dallmer Co. (1950), 153 Ohio St. 258, 265,91 N.E.2d 256, (citation omitted).
 {¶ 19} Pursuant to our de novo review of the subject summary judgment motion, we underscore what we believe to be the pivotal fact in this case, namely, the employee stepped into the pit because someone left the metal lid open. This fact is the proximate cause of employee's injuries. The real question then becomes, who had the duty to close the lid over the pit area when it was not being cleaned or serviced?
 {¶ 20} There is ample evidence that the machine's filter was cleaned daily by other employees. One or more employees may have had the duty of closing the lid. So too, the employer had a duty to supervise the conduct of its employees.[5] Clearly, the supplier had no such duty. Even if the supplier had a duty, the employee has the burden of excluding as the proximate cause the actions of fellow workers who left the lid open, as well as her employer, who may have ignored the dangerous practice of routinely leaving the pit uncovered.
 {¶ 21} For the foregoing reasons, the trial court did not err in granting the supplier summary judgment. Accordingly, the employee's sole assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., Concurs. Gallagher, J., Dissents with Separate DissentingOpinion.
 DISSENTING OPINION {¶ 22} I respectfully dissent from the majority opinion in this case. I believe material issues of fact existed as to the negligence of R.S. Industries.
 {¶ 23} Evidence was introduced in this case that employees of the supermarket experienced ongoing problems with the water temperature in the pan washer that were caused by the sticking of the flotation device. When this problem occurred, the employees would open the lid to the machine so they could constantly get in and pop the flotation device. Relying upon the evidence that this was a routine practice that occurred when the employees experienced problems with the machine, an inference could be made that the lid was open on the day of the accident because of a problem with the flotation device.
 {¶ 24} There was also evidence that R.S. Industries had made numerous service calls to repair problems with the pan washer, concerning its failure to heat the water properly. A couple of the work orders specifically mentioned the flotation device. Reasonable minds could determine from this evidence 1) that R.S. Industries was aware of an ongoing problem with the water heating improperly and with the flotation device, 2) that it was foreseeable that the lid would be left open as a result of the problem, 3) that the problem created a risk of injury to employees, and 4) that despite R.S. Industries' awareness of the problem, it failed to take reasonable measures to repair the problem and prevent injury to the employees.
 {¶ 25} Additionally, there is clearly an issue of fact as to whether R.S. Industries had actual notice of a recurring problem with the machine such that a duty was created to take reasonable measures to prevent injury to the employees. Nevertheless, R.S. Industries contends it was never notified of any problems with the machine after the date of the last service call. However, actual knowledge of a hazardous condition was not necessarily required.
 {¶ 26} As this court has previously recognized, when it is the defendant who has created the hazardous condition that causes the plaintiff's injury, actual knowledge or notice of the condition at issue is not necessary. See Bohme v. Sprint International Communications
(1996), 115 Ohio App.3d 723, 730-731. Here, there was evidence of repeated problems with the water temperature and the flotation device, and numerous repair calls were made. Not only is there an issue of fact as to whether R.S. Industries had actual notice of a recurring problem with the machine, but also, there is an issue of whether R.S. Industries created a hazardous condition for which it was under a duty to exercise reasonable care to relieve itself from liability for injuries resulting to others.
 {¶ 27} In conclusion, I would find that the issue of whether R.S. Industries serviced the machine in a negligent manner is a genuine issue of material fact to be resolved at trial, especially in light of the evidence that R.S. Industries had previously repaired the machine for the problem on several occasions and that the lid was open when the injury occurred, which was often the case when the machine was not working properly.
[1] This statute is now R.C. 2307.71(A)(15), effective April 7, 2005. The wording is unchanged.
[2] Dykstra Deposition, at 95.
[3] The record does not establish when the guardrail was installed at the Twinsburg store.
[4] In order to establish the elements of a design defect claim, a plaintiff must show that: "(1) there was a defect in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the defendant's control; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses." StateFarm Fire Cas. Co. v. Chrysler Corp. (1988), 37 Ohio St.3d 1, 5-6,523 N.E.2d 489.
[5] The employee, however, has not named any individual co-workers as party-defendants in this case. Furthermore, the employee has settled with her employer.